[No. 63730-0. En Banc.]

Argued June 18, 1997.     Decided September 3, 1998.

SARAH K. SCHILLING, *Respondent*, v. RADIO HOLDINGS, INC., ET AL., *Defendants*, ROBERT R. BINGHAM, ET AL., *Appellants*.

ALEXANDER, JOHNSON, and SANDERS, JJ., dissent by separate opinion.

*Jeffrey G. Poole,* for appellants.

*Bart R. Anderson, P.S.,* by *Bart R. Anderson,* for respondent.

TALMADGE, J. — Radio Holdings, Inc., and its president, Robert Bingham, failed to pay wages due Sarah Schilling. Bingham does not dispute Radio Holdings employed Schilling, Schilling is owed back wages, or she was not paid, but alleges Radio Holding's financial problems prevented payment of Schilling, precluding a finding he or the corporation willfully withheld the wages. The King County Superior Court granted summary judgment to Schilling on her claim for double damages pursuant to RCW 49.52.070, which provides for such damages when an employer willfully withholds wages due an employee. As Bingham's refusal to pay wages is willful under a long line of Washington cases and we decline to engraft a "financial inability" defense onto RCW 49.52.070, in the absence of express legislative direction, we affirm the trial court's judgment.

## ISSUE

Does an employer who fails to pay an employee's back wages, because of alleged financial inability to do so, willfully withhold such wages within the meaning of RCW 49.52.070?

## FACTS

Robert Bingham was president of Radio Holdings, Inc.

(Radio Holdings); he and his spouse were sole shareholders of the corporation. Until March 1993, Radio Holdings owned KKFX radio station where Schilling worked as an office manager from January 1991 to March 1993.

In April 1992, Radio Holdings began experiencing financial difficulties and stopped issuing regular paychecks to KKFX employees. Instead, employees were issued "advances on payroll due," which were variable cash amounts representing a portion of each employee's wages due; the balance of the wages would be paid at a later date. These advances were issued so that Radio Holdings could pay other bills to stay in business. Schilling and the other KKFX employees were aware of Radio Holdings' financial problems.

At some point during 1992, Children's Media Network (CMN) agreed to purchase KKFX from Radio Holdings. Bingham asserted the sale was controlled by U.S. Bank, Radio Holdings' secured creditor, but he tried to negotiate payment of employee wages out of the sale proceeds. Bingham later stated, "After negotiating on behalf of the employees for their compensation out of the closing proceeds, I believed that I had come to a binding agreement that required the purchaser of the radio station KKFX to pay the employees' wages." Clerk's Papers at 243. The purchase agreement actually stated in pertinent part:

> All wages and salaries of Seller's employees shall be paid and discharged by Seller to and including 11:59 P.M. on the Closing date, but to the extent, for reasons beyond Seller's control, Seller shall be unable to discharge its obligations in full as to any employee or employees, Buyer shall be allowed a credit therefor to permit payment thereof by Buyer.

Clerk's Papers at 196.

Bingham wrote to Schilling on August 28, 1992, expressly assuring her she would be paid in full:

> I have made arrangements with the bank that *all past due monies owed employees will be paid* out of the closing proceeds upon completion of the sale.

156

Clerk's Papers at 195 (emphasis added). Bingham also assured Schilling orally she would be paid in full. Schilling received assurances as well from a person she believed was working for CMN. Schilling averred that she worked for a year without contemporaneous payment of wages because she believed she would be paid in full upon the sale of KKFX: "Because I thought I was going to be paid in full when the radio station was sold, I continued to work for Mr. Bingham and Radio Holdings." Clerk's Papers at 220.

In August 1992, despite Bingham's apparent belief CMN would pay the back wages of KKFX employees, he set aside $25,000 to pay wages due to employees. He believed the $25,000 fund would be sufficient to pay all of the wages that would accrue up until the sale. The sale did not close when scheduled, however, and the wages continued to accrue beyond the $25,000. In addition, Bingham paid $13,000 out of the fund to a former employee who had threatened to sue Radio Holdings and one of its employees for sexual harassment. The $13,000 represented the back wages of the potential defendant, and was allegedly paid at that employee's request. As a result of the $13,000 payment and the delayed closing, the $25,000 fund was insufficient to pay all KKFX employees their back wages when the sale finally closed.

On March 24, 1993, a Radio Holdings accountant offered Schilling $3,241.34 in compensation for her back wages, although she was owed nearly $14,000, provided she sign a release form absolving Radio Holdings, U.S. Bank, CMN, and related parties of any claims arising from her employment at KKFX. According to Schilling, the accountant also told her "that Bingham wanted to simply give [the employees their] checks, but CMN insisted that he obtain [the employees'] signatures or he they [sic] would not release the funds." Clerk's Papers at 241. Schilling refused to sign the release.

Schilling then filed suit against Bingham, Radio Holdings, CMN, and several other defendants, on a variety of theories including RCW 49.52.070 for Bingham's willful

withholding of wages. Bingham denied liability because he did not receive anything out of the closing proceeds and his failure to pay wages was not intentional. Bingham moved for summary judgment, alleging a lack of willful conduct for purposes of the statute. The motion was denied and the Court of Appeals denied discretionary review. Ultimately, Schilling filed a motion for summary judgment, which the trial court granted, directing that a judgment be entered in her favor in the amount of $13,955, with an additional punitive award of $13,955, and her attorney fees and costs. We granted direct review. RAP 4.2(a).

## ANALYSIS

In reviewing a summary judgment, we engage in the same inquiry under CR 56 as the trial court. *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). We must determine if there are any genuine issues of material fact and whether Schilling was entitled to judgment as a matter of law. CR 56(c).

■ ■ The Legislature has evidenced a strong policy in favor of payment of wages due employees by enacting a comprehensive scheme to ensure payment of wages, including the statutes at issue here which provide both criminal and civil penalties for the willful failure of an employer to pay wages. *See United Food & Commercial Workers Union Local 1001 v. Mutual Benefit Life Ins. Co.*, 84 Wn. App. 47, 51-52, 925 P.2d 212 (1996) (citing from chapters 49.46 and 49.48 RCW, and noting RCW 49.52.050 in discussing the statutory scheme of state laws granting employees nonnegotiable, substantive rights regarding minimum standards for working conditions, wages, and the payment of wages). In RCW 49.48, the Legislature mandated that employers pay employees all wages due upon the conclusion of the employment relationship and banned all withholding or diversion of wages by employers unless specifically approved by statute. RCW 49.48.010. The Legislature allowed recovery of attorney fees in actions to recover wages due.

RCW 49.48.030. The Department of Labor and Industries was given concurrent administrative enforcement powers for claims of failure to pay wages. RCW 49.48.040-.070.[1]

The Legislature also established a remedy of exemplary damages if an employer willfully refuses to pay wages. RCW 49.52.050 provides, in pertinent part, that "[a]ny employer or officer, vice principal or agent of any employer" is guilty of a misdemeanor if that entity "[w]ilfully and with intent to deprive the employee of any part of his wages, [pays] any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract[.]" RCW 49.52.050(2).[2] RCW 49.52.070 provides a corresponding civil remedy against the employer, its officers and agents:

> Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivi

---

[1] In addition, for more than 100 years, the Legislature has recognized a preference for certain wage claims in the event of employer insolvency, RCW 49.56.010, or death of the employer, RCW 49.56.020.

[2] Although this argument was never made by Bingham in his briefing, the dissent attempts to analogize the "constitutional prohibition against imprisonment for debt" with "civil liability under the statute" (*see* Dissenting op. at 170-71), but the comparison is far from apt. Constitution article I, section 17 prohibits *imprisonment* for debt, it does not prohibit the civil remedy of double damages. The fact that RCW 49.52.050 provides a misdemeanor penalty for its violation does not somehow act as a defense to civil liability imposed under RCW 49.52.070. Incarceration does not necessarily follow a violation of the statute, and is not even an issue here.

Likewise, the dissent's reliance on *State v. Curry*, 118 Wn.2d 911, 829 P.2d 166 (1992) (*see* Dissenting op. at 171) as supporting its view on this matter is equally mystifying. Therein we upheld the constitutionality of RCW 7.68.035(1)'s mandatory victim penalty assessments, adopting federal pronouncements on the matter as follows:

> [c]onstitutional principles will be implicated . . . only if the government seeks to enforce collection of the assessments " 'at a time when [the defendant is] unable, through no fault of his own, to comply.' " . . .
>
> . . . *It is at the point of enforced collection . . ., where an indigent may be faced with the alternatives of payment or imprisonment, that he "may assert a constitutional objection on the ground of his indigency."*

*Curry*, 118 Wn.2d at 917 (emphasis added) (alterations in original) (citations omitted). The requisite threat of imprisonment for nonpayment is not present here. Thus, the dissent's discussion of Constitution article I, section 17 protections is simply irrelevant.

sions [RCW 49.52.050(2)] shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.

By providing for costs and attorney fees, the Legislature has provided an effective mechanism for recovery even where wage amounts wrongfully withheld may be small. *See Brandt v. Impero*, 1 Wn. App. 678, 682, 463 P.2d 197 (1969). This comprehensive legislative system with respect to wages indicates a strong legislative intent to assure payment to employees of wages they have earned. As we stated in *State v. Carter*, 18 Wn.2d 590, 621, 140 P.2d 298, 142 P.2d 403 (1943), with respect to RCW 49.52.050 (under its prior designation as REM. REV. STAT. § 7612-21 (Supp. 1941)):

> [T]he fundamental purpose of the legislation, as expressed in both the title and body of the act, is to protect the *wages* of an employee against any diminution or deduction therefrom by rebating, underpayment, or false showing of overpayment of any part of such wages. The act is thus primarily a protective measure, rather than a strictly corrupt practices statute. In other words, the aim or purpose of the act is to see that the employee shall realize the full amount of the wages which by statute, ordinance, or contract he is entitled to receive from his employer, and which the employer is obligated to pay, and, further, to see that the employee is not deprived of such right, nor the employer permitted to evade his obligation, by a withholding of a part of the wages . . .

The statute must be liberally construed to advance the Legislature's intent to protect employee wages and assure payment. *See Brandt v. Impero*, 1 Wn. App. at 682.

The critical determination in a case under RCW 49.52.070 for double damages is whether the employer's failure to pay wages was "willful." In the past, our test for "willful" failure to pay has not been stringent: the employer's refusal to pay must be volitional. Willful means

"merely that the 'person knows what he is doing, intends to do what he is doing, and is a free agent.' " *Brandt*, 1 Wn. App. at 681. *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 500, 663 P.2d 132 (1983) ("Under RCW 49.52.050(2), a non-payment of wages is willful when it is not a matter of mere carelessness, but the result of knowing and intentional action."). The nonpayment of wages is willful "when it is the result of a knowing and intentional action[.]" *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 659, 717 P.2d 1371 (1986).

■ Ordinarily, the issue of whether an employer acts "willfully" for purposes of RCW 49.52.070 is a question of fact. *Pope v. University of Wash.*, 121 Wn.2d 479, 490, 852 P.2d 1055, 871 P.2d 590 (1993), *cert. denied*, 510 U.S. 1115, 114 S. Ct. 1061, 127 L. Ed. 2d 381 (1994); *Lillig*, 105 Wn.2d at 660. However, where, as here, there is no dispute as to the material facts, we will resolve the case on summary judgment. CR 56(c); *State v. Clark*, 129 Wn.2d 211, 225, 916 P.2d 384 (1996) (when reasonable minds could reach but one conclusion from the evidence presented, questions of fact may be determined as a matter of law); *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 190, 829 P.2d 1061 (1992); *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 353, 779 P.2d 697 (1989). *See also Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 770, 733 P.2d 530 (1987) (if no genuine issue of material fact is presented when the motion for summary judgment is heard, the issue may be summarily resolved); *Lundgren v. Kieren*, 64 Wn.2d 672, 677-78, 393 P.2d 625 (1964).

■ Our prior cases indicate that there are two instances when an employer's failure to pay wages is not willful: the employer was careless or erred in failing to pay, or a "bona fide" dispute existed between the employer and employee regarding the payment of wages. "Lack of intent may be established either by a finding of carelessness or by the existence of a bona fide dispute." *Pope*, 121 Wn.2d at 491 n.4. Neither of these circumstances obtains here.

■ Our cases have recognized "mere carelessness" as

an excuse to willfulness under RCW 49.52.070, but these cases have not discussed this concept in any great detail. *See, e.g., Brandt,* 1 Wn. App. at 681; *Ebling,* 34 Wn. App. at 500. The concept of carelessness or inadvertence suggests errors in bookkeeping or other conduct of an accidental character. Carelessness or inadvertence negates the willfulness necessary to invoke double damages under RCW 49.52.070 when the employer's failure to pay wages involves a legitimate error or inadvertence.

Bingham has not alleged that he inadvertently offered Schilling less than she was owed. Bingham does not dispute that Schilling is owed $13,955 in back wages,[3] or that Radio Holdings was contractually liable to Schilling. Bingham does not dispute that Radio Holdings attempted to pay Schilling less than she was owed, he was aware of this, and Schilling had not been paid. Indeed, the letter that accompanied Schilling's partial wage payment explained the problems resulting from the delayed closing and acknowledged that the check was for less than "100% of the amount due." Clerk's Papers at 223. Thus, Bingham's failure to pay Schilling the wages she was owed did not result from mere "carelessness."

█ In contrast to the law on the inadvertence defense, our case law on the existence of a bona fide dispute sufficient to preclude a finding of willfulness under the statute is well developed. The dispute must be "bona fide," i.e., a "fairly debatable" dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid. *See Brandt,* 1 Wn. App. at 680-81 (no bona fide dispute where employer failed to pay logger wages because of economic reverses and falsified tax records); *Simon v. Riblet Tramway Co.,* 8 Wn. App. 289, 293, 505 P.2d

---

[3] THE COURT: There isn't any real dispute but that Sarah Schilling was owed "X" dollars —
MR. GAUTSCHI [Counsel for Bingham]: That's correct.
THE COURT: Right? I mean nobody is really arguing anything about that.
MR. GAUTSCHI: No one is arguing that.

Report of Proceedings (12/15/95) at 9.

1291, 66 A.L.R.3D 1069 (dispute over bonus—no double damages), *review denied*, 82 Wn.2d 1004, *cert. denied*, 414 U.S. 975, 94 S. Ct. 289, 38 L. Ed. 2d 218 (1973); *Ebling*, 34 Wn. App. at 500-02 (no bona fide dispute regarding commission amounts actually owed sailboat salesman—double damages upheld); *Cannon v. City of Moses Lake*, 35 Wn. App. 120, 663 P.2d 865 (dispute over accumulated sick/vacation leave fairly debatable—no double damages), *review denied*, 100 Wn.2d 1010 (1983); *Cameron v. Neon Sky, Inc.*, 41 Wn. App. 219, 703 P.2d 315 (deduction by employer of a disputed debt from wages owed—no double damages), *review denied*, 104 Wn.2d 1026 (1985); *Moran v. Stowell*, 45 Wn. App. 70, 81, 724 P.2d 396 (sick leave dispute—no double damages), *review denied*, 107 Wn.2d 1014 (1986); *Lillig*, 105 Wn.2d at 659-60 (conflict over incentive bonuses, dispute over actual amount owing—no double damages); *Chelan County Deputy Sheriffs' Ass'n v. Chelan County*, 109 Wn.2d 282, 300-03, 745 P.2d 1 (1987) (dispute over deputy on-call time payments—no double damages); *Yates v. State Bd. for Community College Educ.*, 54 Wn. App. 170, 176-77, 773 P.2d 89 (dispute over professional improvement credits—no double damages), *review denied*, 113 Wn.2d 1005 (1989); *Pope*, 121 Wn.2d at 489-91 (University withheld disputed social security taxes from wages of student employees ineligible for retirement system—no double damages). In *Department of Labor & Indus. v. Overnite Transp. Co.*, 67 Wn. App. 24, 34-36, 834 P.2d 638 (1992), *review denied*, 120 Wn.2d 1030, 847 P.2d 481 (1993), the Court of Appeals emphasized the need for a "bona fide" dispute when it held an employer's explanation for refusing to pay its truck drivers overtime wages—the alleged preemption of state overtime wage laws by the federal Motor Carriers Act—was not fairly debatable.

Bingham's failure to pay Schilling in this case was not because of a "bona fide dispute" in light of the foregoing authorities. Although Bingham claims he thought CMN would pay Schilling's back wages, he does not dispute she is owed $13,955. Thus, no bona fide dispute exists regarding the *amount* of back wages.

Bingham apparently argues, however, because he thought CMN would pay the balance of the employees' wages, there was a bona fide dispute as to his general obligation to pay. This is supported, Bingham argues, by his declaration, in which he stated, "I told [the KKFX employees] that I was negotiating for a clause in the sale agreement that would require the seller to pay the employee's wages as part of the sale between the two companies." Clerk's Papers at 40. Bingham claims his negotiations with CMN, as well as the clause in the purchase agreement, led him to the reasonable conclusion CMN would pay the balance of any back wages owed KKFX employees, and he therefor lacked the requisite intent to establish liability under RCW 49.52.070. Bingham argues Schilling's own declaration evidences a lack of willfulness on his part. Schilling stated: "To this day, I believe that [Bingham] had a concern for our back pay and also believe that he honestly believed that we were covered and that he was speaking for both CMN and Radio [H]olding." Clerk's Papers at 53.

Regardless of what Bingham may have believed earlier, when his company tried to pay Schilling $3,241.34 instead of the nearly $14,000 she was owed, Bingham should have realized Schilling was not being paid her full wages. According to the letter accompanying Schilling's check, CMN required employees to sign the release form in exchange for receiving their checks. The release absolves not only Radio Holdings, but also CMN. Thus, although Bingham may have believed at one time that CMN would pay the balance of the KKFX wages due, at the point in time when Radio Holdings withheld wages it owed to Schilling, Bingham should have known CMN was not going to pay the balance. Given this, Bingham could not have legitimately disputed his obligation to pay.

█ The principal contention advanced by Bingham as a defense to double damages is that his failure to pay wages was not willful because of the precarious financial status of Radio Holdings. Bingham also argues he did not willfully withhold Schilling's wages because he set aside $25,000 in

an effort to pay the employees' back wages. Bingham notes he did not receive any of the funds from the closing, and claims that if he had declared bankruptcy, the employees would not have received any back wages. Apparently, Bingham's argument is he could not have willfully withheld Schilling's wages if his failure to pay was caused by Radio Holdings' insolvency.

The most troublesome issue with respect to Bingham's "financial inability" argument is his failure to articulate any standard for such "financial inability." No published Washington appellate decision has held an employer's financial status renders refusal to pay wages nonvolitional, and the facts of this case illustrate why this is so.[4] Bingham offers no test by which we can adequately measure his or Radio Holdings' inability to pay Schilling. Must the employer be insolvent to the point of being eligible for bankruptcy to meet the test? If the standard is a lesser one, where should the line be drawn between inability and a financial choice not to pay? For example, if a company's accountants decide shareholders should be paid a dividend to continue investor interest in the company's stock, and the dividend is financed by withholding wages to certain employees, is the employer financially unable to pay wages? If the employer continues to pay vendors, other creditors, or even management of the company, but does not pay employee wages, is the employer financially unable to pay? In the absence of a clearly demarcated test for financial inability to pay, we cannot conclude Bingham's failure to pay Schilling was anything but willful under our cases.[5]

▪ The Legislature is, of course, free to add a further

---

[4]In *Brandt*—the only reported Washington decision mentioning financial hardship in this context—the Court of Appeals' rejection in dicta of defendant's assertion of financial inability based on insufficient evidence does not amount to judicial recognition of financial hardship as a defense to nonpayment of wages. 1 Wn. App. at 680-81

[5]Even if we were to recognize "financial inability" as a defense to an employee's claim for unpaid wages under RCW 49.52, we do not have proof in this record, apart from general claims of losses by Bingham on the sale of KKFX or Radio Holdings' precarious financial status, that either Bingham or Radio Holdings were unable to pay Schilling. Bingham has never specifically proved he

exception to the double damages provisions of RCW 49.52.070 if it so chooses.[6] However, we are not free to engraft such an exception to the statute where the plain language of the statute is to the contrary. *See State v. McNichols*, 128 Wn.2d 242, 249, 906 P.2d 329 (1995) (the court may not graft onto the implied consent statute any additional warnings not contained in the plain language of that statute); *State v. Bostrom*, 127 Wn.2d 580, 586-87, 902 P.2d 157 (1995) (when the language of a statute is unambiguous, courts may not alter the statute's plain meaning by construction).

## CONCLUSION

An employer or agent of an employer who fails to pay an employee's wages withholds such employee's wages "willfully and with intent to deprive" if the employer volitionally fails to pay the employee. While inadvertence or the existence of a bona fide dispute over the obligation to pay or the amount of the wages may effectively negate the necessary statutory willfulness, neither defense is proven in this case. In the absence of an express legislative exception to the double damages provision of RCW 49.52.070 for an

---

or Radio Holdings was insolvent or financially unable to pay Schilling. Indeed, the company and/or Bingham had the financial wherewithal to set up a $25,000 wage fund, and to take steps for a significant period of time to stay in business. Bingham made choices to pay other creditors before Schilling. Moreover, Bingham made a decision to invade the $25,000 wage fund to pay a sexual harassment settlement against another employee and Radio Holdings rather than pay Schilling. Where he and his wife were sole shareholders of Radio Holdings, Bingham personally benefited from this invasion of the wage fund to settle a potentially embarrassing and expensive claim against the corporation. These financial decisions would appear to belie the financial inability of Bingham and the corporation to pay Schilling. Instead, they demonstrate Bingham and Radio Holdings made volitional financial choices not to pay Schilling, violating RCW 49.52.070.

[6]RCW 49.52.070 provides a specific exception to the double damages requirement of the statute for an "employee who has knowingly submitted to such violations." This exception evidences the Legislature's understanding of its ability to carve out exceptions to the double damages provision of the statute. It did not do so for an employer's precarious financial status.

This statutory exception was not argued by Bingham below, RAP 2.5(a), and is not supported where Schilling was repeatedly promised full payment of her wages, albeit not on a timely basis.

employer who alleges a financial inability to pay wages due, we decline to create such an exception judicially.

We affirm the trial court's judgment in favor of Schilling and award her attorney fees on appeal. RCW 49.52.070; RAP 18.1.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, and MADSEN, JJ., concur.

ALEXANDER, J. (dissenting) — I agree with the majority's recitation of the facts and its conclusion that when Radio Holdings' accountant attempted to tender $3,241.34 to Schilling in exchange for her release of Radio Holdings and the Children's Media Network, Bingham was aware that Schilling had not been paid and, indeed, was not going to be paid, all of the wages she was owed. I also agree that the cases that have addressed RCW 49.52.070 *thus far* have not indicated that a failure to pay wages for financial reasons shows a lack of willfulness. *See Pope v. University of Wash.*, 121 Wn.2d 479, 491 n.4, 852 P.2d 1055 (1993) (absence of willfulness "may be established either by a finding of carelessness or by the existence of a bona fide dispute") (citing *Yates v. State Bd. for Community College Educ.*, 54 Wn. App. 170, 176-77, 773 P.2d 89, *review denied*, 113 Wn.2d 1005, 777 P.2d 1050 (1989); *Brandt v. Impero*, 1 Wn. App. 678, 681, 463 P.2d 197 (1969); *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 501, 663 P.2d 132, *review denied*, 100 Wn.2d 1005 (1983)).[7] I disagree, however, that these prior cases dictate a holding that an employer who withholds an employee's wages for some reason other than carelessness or the existence of a bona fide dispute necessarily withholds the wages "willfully." The question has simply not arisen before this court. Faced squarely with it now, however, precedent does not require us to mechanically conclude that an employer acts willfully in every *other* situation where wages are withheld. Rather, the prior

---

[7]There is no argument here that Schilling's wages were withheld due to carelessness or any dispute over the amount owed.

opinions represented rules of law promulgated in response to specific facts. Where, as here, the court has not yet addressed whether an employer acts willfully under a particular set of facts, the absence of a case on point should not prevent us from considering whether one has acted willfully. It is my view that an employer or its agent does not act willfully, for purposes of RCW 49.52.050 and .070, if that employer or agent pays an employee less wages than he or she is owed due to the employer's inability to pay the full wages. Because under the facts of this case "reasonable minds" could conclude that Bingham was financially unable to pay Schilling, in which case he would not have acted willfully, I dissent.

We may affirm a trial court's order granting summary judgment only if we are satisfied, after considering the facts in the light most favorable to the nonmoving party, that "there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Barnes v. McLendon*, 128 Wn.2d 563, 569, 910 P.2d 469 (1996) (citing *In re Estates of Hibbard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992)). All questions of law are reviewed de novo. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994) (citing *Syrovy v. Alpine Resources, Inc.*, 122 Wn.2d 544, 548 n.3, 859 P.2d 51 (1993)). The nonpayment of wages is willful "when it is the result of a knowing and intentional action." *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 659, 717 P.2d 1371 (1986) (citing *Ebling*, 34 Wn. App. 495). Willful means "merely that the 'person knows what he is doing, intends to do what he is doing, and is a free agent.' " *Brandt*, 1 Wn. App. at 681 (quoting *Davis v. Morris*, 37 Cal. App. 2d 269, 99 P.2d 345 (1940)).

Whether an employer acts "[w]ilfully and with intent" for purposes of RCW 49.52.050(2) is a question of fact to be reviewed under the substantial evidence standard. *Pope*, 121 Wn.2d at 490 (citing *Lillig*, 105 Wn.2d at 660). Nevertheless, "when reasonable minds could reach but one conclusion" from the evidence accompanying a summary

judgment motion, such "questions of fact may be determined as a matter of law." *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 353, 779 P.2d 697 (1989). We must bear in mind, however, that "[s]ummary judgment exists to examine the sufficiency of legal claims and narrow issues, not as an unfair substitute for trial." *Babcock v. State*, 116 Wn.2d 596, 599, 809 P.2d 143 (1991). Therefore, it is only if reasonable minds could reach the sole conclusion that Bingham willfully withheld Schilling's wages that this case may be decided as a matter of law.

Construing the facts in the light most favorable to Bingham, as we must, it is apparent from the record that Radio Holdings, not Bingham, employed Schilling, and that Bingham never represented to Schilling that he would pay her out of his own pocket. Thus, Bingham was never personally liable to pay Schilling's wages. Moreover, reasonable minds could conclude that Radio Holdings lacked funds to pay Schilling more than the $3,241.34 it offered her. *See* CP at 39 ("there was little or no money in [Radio Holdings]"); CP at 40 ("U.S. Bank was . . . able to capture 100% of the funds out of the closing."); CP at 197 ("[check for $3,241.34] represents [Schilling's] pro-rata share of the monies the bank was willing to release for past due payroll."). If reasonable minds could conclude that Radio Holdings lacked funds to pay Schilling, and Bingham was not required to pay Schilling out of his own pocket, then they could also conclude that Bingham did not *willfully* withhold her wages.

That this case presents a triable issue is also manifested by the page of rhetorical questions that the majority poses about what constitutes a "financial inability" to pay. *See* Majority op. at 164. "In the absence of a clearly demarcated test for financial inability to pay," the majority reasons, the court must conclude that Bingham's actions were willful. Majority op. at 164. I disagree. It is precisely because we are unable to determine what factually constitutes an inability to pay that we must remand this case for trial. Deciding a factual question such as this simply because we

cannot define a standard to be applied improperly invades the province of the jury.

I also disagree with the majority's assertion that remanding this case for trial would require us to graft an additional exception to liability onto RCW 49.52.070. *See* Majority op. at 164-65 ("The Legislature is, of course, free to add a further exception to the double damages provisions of RCW 49.52.070 if it so chooses."). Remanding this case for trial does not require the creation of some "exception" to liability under RCW 49.52.070, it merely requires us to interpret the word "willfully." In deferring in this way to the Legislature, the majority evades the most fundamental of the court's duties—interpreting statutes. *See, e.g., Ashenbrenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 26, 380 P.2d 730 (1963) ("It is obviously the duty of this court to interpret the statute in question.").

*Simon v. Riblet Tramway Co.*, 8 Wn. App. 289, 505 P.2d 1291, 66 A.L.R.3D 1069, *review denied*, 82 Wn.2d 1004 (1973), is illustrative of this point. There, an employer withheld an employee's bonus on grounds that payment of it was discretionary. The only defense to an action brought under RCW 49.52.070, according to the case law up to that time, was when an employer withheld an employee's wages through carelessness. Nevertheless, the Court of Appeals proceeded, without citation, to recognize another defense:

> RCW 49.52.050(2) and .070 are not meant to apply to this factual situation; herein, there was a bona fide disagreement between employer and employee with regard to . . . a discretionary bonus. This situation evidences no intentional deprivation of wages as required to sustain a claim under RCW 49.52.050.

*Simon*, 8 Wn. App. at 293. Like the Court of Appeals in *Simon*, we should apply RCW 49.52.050(2) and .070 to the facts before us in a commonsense manner, uninhibited by prior decisions applying the term "willfully" in distinguishable factual circumstances.

Also instructive is a California court's interpretation of

the term "willful" in a similar context. In *People v. Alves*, 155 Cal. App. 2d Supp. 870, 320 P.2d 623 (Cal. App. Dep't Super. Ct. 1957), the Appellate Division of the California Superior Court considered whether a statute that criminalizes an employer's willful failure to make payments to a health and welfare fund violated a provision in the California Constitution forbidding imprisonment for debt except in cases of fraud. Noting that "wages are not ordinary debts," the court concluded that a failure to pay wages "amounts to a 'case of fraud' " and that the statute therefore did not violate the constitutional provision. *Alves*, 320 P.2d at 624 (quoting *In re Trombley*, 31 Cal. 2d 801, 193 P.2d 734, 740 (1948)). In so holding, the court stated that the term " 'wilful' implies that the employer has the ability to pay, for if he lacks the ability to pay there is no wilful failure on his part . . . . Although the words 'having the ability to pay' do not appear in [the statute], the prosecution must prove such ability." *Alves*, 320 P.2d at 625.

*Alves* is helpful not only because it involved the interpretation of a term similar to the one at issue here, but also because the Washington Constitution, like its California counterpart, prohibits incarceration for failure to pay a debt. *See* Const. art. I, § 17. Although the statute under which Schilling sued, RCW 49.52.070, provides only for civil damages, liability is premised on a preliminary determination that the employer violated RCW 49.52.050(2). The latter statute makes it a misdemeanor to willfully withhold an employee's wages, and thus presumably subjects the violator to imprisonment. *See* RCW 9A.20.010(2) (defining misdemeanor as an offense for which "imprisonment in a county jail" is possible).[8] While we have not directly addressed in Washington the constitutional issue confronted in *Alves*, it is reasonable to assume that because of our similar constitutional provision, an employer in Washington could not be held criminally liable under RCW 49.52.050 if the employer is financially unable to pay the employee. I

---

[8]There are no reported cases involving a criminal prosecution for violation of RCW 49.52.050.

fail to see why that statute should receive a different construction in assessing an employer's civil liability under RCW 49.52.070.

Language in *State v. Curry*, 118 Wn.2d 911, 829 P.2d 166 (1992), is consonant with the notion that an employer's financial ability to pay is a prerequisite to a finding that the employer acted willfully. In that case, we rejected the defendants' claim that the imposition of a mandatory victim penalty assessment was unconstitutional on its face. Noting that article I, section 17 would preclude imprisonment solely for inability to pay, we concluded that "no defendant [would] be incarcerated for his or her inability to pay the penalty assessment unless the violation is willful." *Curry*, 118 Wn.2d at 918.

In short, the previously noted defenses to a finding of willful failure to pay wages were not carved into the granite of the statute, as one would perhaps believe from a cursory reading of the majority opinion. Rather, they resulted from courts construing what constitutes acting "[w]ilfully and with intent to deprive the employee of any part of his wages." RCW 49.52.050(2). The majority acknowledges this fact, albeit begrudgingly, observing on the one hand that "[i]n the absence of an express legislative exception . . . for an employer who alleges a financial inability to pay wages due, we decline to create such an exception judicially," Majority op. at 165-66, and on the other hand conceding that it is actually prior "cases"—not the statute itself—that "indicate that there are two instances when an employer's failure to pay wages is not willful." Majority op. at 160.

It is unclear why the majority concludes that *this* court should be precluded from developing any further case law in this area upon being confronted with a case which calls upon us to construe whether activity is forbidden by RCW 49.52.050(2) under facts clearly distinguishable from cases decided before. The majority is apparently content to put its seal of approval upon the two previously found defenses, and yet closes the door to further interpretation. The fact

that the majority disapproves of a "financial inability to pay wages" defense should not allow it to reminisce about inapposite cases in order to avoid the exercise of considering the literal meaning, under the *present* facts, of the requirement that an employer act "wilfully and with intent to deprive" to incur liability. "[A]n interpretation of a statute producing . . . strained consequences must be avoided." *Griffin v. Eller*, 130 Wn.2d 58, 80, 922 P.2d 788 (1996) (Talmadge, J., dissenting) (citations omitted). Yet, despite the obvious meaning of the words used in the statute, the majority strains to find here the "[a]ffirmative evidence of *intent to deprive* an employee of wages . . . is necessary to establish liability under RCW 49.52.050." *Pope*, 121 Wn.2d at 491 n.4 (emphasis added). In my view, it is far better to heed the wisdom of another court: "[W]e take 'wilfully' to mean voluntarily, with knowledge of the obligation *and despite the financial ability to pay it.*" *Ives v. Manchester Subaru, Inc.*, 126 N.H. 796, 498 A.2d 297, 302 (1985) (emphasis added) (interpreting a New Hampshire wage statute).

Construing the facts of this case in favor of Bingham, I am satisfied that "reasonable minds" could conclude that Radio Holdings lacked the financial resources to pay more than the $3,241.34 it offered Schilling and, thus, did not act willfully in failing to pay full wages owed. Accordingly, I would reverse the trial court and remand this case for trial. Thus, I dissent.

JOHNSON and SANDERS, JJ., concur with ALEXANDER, J.