IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JANEÉ WOLF, | ) | No. 30245-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IDA MARKETING SERVICES, INC., a | ) | |
| Washington corporation; JUSTIN | ) | |
| BRUNSON and CHRISTINE BRUNSON, | ) | |
| husband and wife, individually and the | ) | |
| marital community composed thereof, | ) | |
| | ) | UNPUBLISHED OPINION |
| Defendants, | ) | |
| | ) | |
| TORRY WEBB and BRENDA WEBB, | ) | |
| husband and wife, individually and the | ) | |
| marital community composed thereof, | ) | |
| | ) | |
| Appellants. | ) | |

KORSMO, C.J. — IDA Marketing Services Inc. terminated Ms. Janeé Wolf's

employment without paying approximately six months of wages. She successfully sued

IDA, officers Torry Webb and Justin Brunson, and their respective marital communities.

Finding no reversible error, we affirm and award respondent her attorney fees.

FACTS

Throughout 2008, IDA was in the process of hiring its management and developing materials for the sales force that it hoped to hire once it opened for business. IDA president Scott Richey hired Ms. Wolf to be vice president of AIREs (Awards, Incentives, Recognition, and Events). Ms. Wolf started work on March 3, 2008, and immediately began developing IDA's incentives program as well as the operations manuals for its sales force. She was treated as an employee: she worked over 40 hours per week, had a cubicle, a computer, remote access to work from home, an IDA e-mail address, keys and the security code to the office, accrued leave, and was permissively representing the corporation in transactions with third parties.

However, Ms. Wolf had not signed any employment documents and did not have written documentation of her salary. She and Mr. Richey discussed an annual salary of $60,000 ($5,000 per month) and Mr. Richey also discussed that same figure with Mr. Webb. Mr. Webb later testified that he never discussed a $60,000 cash salary with Ms. Wolf. Instead, Mr. Webb testified in his deposition that he had actually agreed to pay Ms. Wolf $5,000 worth of stock options per month in compensation for her prelaunch services. Ms. Wolf testified, however, that they had agreed to a salary of $5,000 per month in cash, and that stock options would be added to the compensation package once

options became available. Despite these discussions, Ms. Wolf never received a paycheck or stock options for her services during this time period.

After nearly six months of work, Cameron Hysjulien, IDA's general manager, came to Ms. Wolf with an employee packet and welcome letter from Justin Brunson that noted Ms. Wolf's start date as September 1 rather than March 3. Ms. Wolf was not the only employee to receive belated hiring documents. IDA's other initial employees and contractors did not receive hiring packets until months after they started drawing paychecks. Justin Brunson spent July and August 2008 creating employee files for several people who had started working for IDA months earlier; the belated documentation appeared to be standard operating procedure for IDA.

A week after Ms. Wolf's "official" start date, IDA opened for business. Ms. Wolf then started receiving regular paychecks from IDA commensurate with a $60,000 annual salary. On November 26, 2008, Mr. Webb met with Ms. Wolf to tell her she was being laid off. During that meeting, Mr. Webb allegedly acknowledged that IDA owed her $30,000 in back pay and also allegedly promised to double that amount to $60,000—a full year's salary.

Ms. Wolf continued to wait for her back pay, but none ever arrived. In April 2009, Ms. Wolf set up a meeting with Mr. Webb to discuss her back pay. The two met on April 9, along with Ms. Wolf's husband and Mr. Webb's executive assistant. During

3

this meeting, Mr. Webb promised to pay Ms. Wolf in cash, stock options, or any mix of the two that she chose, and he told her to get back to him with a decision after she took some time to think about it. It is unclear whether the amount that Mr. Webb agreed to pay during this meeting was $30,000 or $60,000.

The following day, Ms. Wolf memorialized the meeting in an e-mail to Mr. Webb. The e-mail summarized the alleged agreement of the parties that she had agreed to work for $5,000 a month plus stock options and that Mr. Webb had agreed to pay $60,000 divided evenly in cash and stock options and that Mr. Webb had said it would take between 90 and 120 days for IDA to pay the cash.

Mr. Webb and IDA never responded to the e-mail. However, when Ms. Wolf later filed a wage complaint with the Department of Labor & Industries (Department), IDA produced a copy of minutes that were allegedly prepared by Mr. Webb's executive assistant following the April 9 meeting. These minutes acknowledge that Mr. Webb agreed to pay Ms. Wolf the back wages based on a $60,000 per year salary, split however she wanted, and that she requested an even split between cash and stock options. The minutes also do not specify how much Mr. Webb agreed to pay in back wages and said that Ms. Wolf would only receive the cash election upon IDA becoming profitable and that it was subject to the approval of IDA's board of directors. Ms. Wolf, however, had never seen a copy of these minutes prior to the Department's claim investigation and

4

questioned their authenticity. It is unknown when these minutes were drafted and if they were subsequently edited.[1]

Ms. Wolf ultimately withdrew her wage claim and brought suit after mediation efforts facilitated by the Department reached an impasse. After a three-day bench trial, Benton County Superior Court found that (1) Ms. Wolf was an employee from March through September 2008, (2) IDA owed her wages in the amount of $5,000 per month during this time period, (3) the amount should be doubled and IDA's officers held personally liable because they willfully withheld the wages, (4) a bona fide dispute did not exist regarding the wages owed, and (5) Ms. Wolf was entitled to attorney fees and costs under RCW 49.48.030 and RCW 49.52.070. The Webbs timely appealed to this court.

## ANALYSIS

The Webbs present four issues on appeal. First, they contend that the trial court erred by (1) awarding Ms. Wolf attorney fees under RCW 49.48.030, (2) finding that the officers willfully withheld the wages, (3) refusing to allow the Webbs to introduce copies of Ms. Wolf's and Mr. Richey's depositions at trial, and (4) not granting their motion for a new trial. We address these issues in that order.

---

[1] The reference to approval by IDA's board of directors was also odd because IDA admittedly never had a board of directors.

5

*RCW 49.48.030*

RCW 49.48.030 provides for mandatory attorney fees and costs in any civil suit in which an employee recovers more in withheld wages than what the employer admits to owing. Throughout the course of litigation, the Webbs admitted to owing Ms. Wolf $30,000. Ultimately, the trial court found that IDA and its officers owed her $30,000. Thus, the Webbs contend that Ms. Wolf received exactly, and not more than, what IDA and its officers admitted to owing.

However, this argument neglects the fact that IDA and its officers only admitted to owing $30,000 in stock options, not cash. These stock options never existed, and there was no reason for anyone at any point to believe that these stock options would ever exist. Accordingly, IDA and its officers never admitted to owing anything more than a nonexistent asset. Considering that the trial court found that IDA and its officers owed Ms. Wolf $30,000 in cash as opposed to $30,000 worth of a nonexistent asset that had no real value, the trial court did not err by awarding Ms. Wolf reasonable attorney fees and costs under RCW 49.48.030.

The Webbs also argue Ms. Wolf was not entitled to fees and costs under this statute because she received a judgment for less than what she claimed was owed. At trial, Ms. Wolf demanded the $30,000, plus the additional $30,000 that Mr. Webb allegedly promised during her exit interview, but Ms. Wolf did not obtain the full amount

6

requested. However, the plain language of the statute requires payment and fees without reference to the amount demanded by the employee. The exception to RCW 49.48.030's fee shifting provisions only applies when the employee recovers as much as or less than what the employer admits to owing: "PROVIDED, HOWEVER, That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary." RCW 49.48.030. The statute does not contain a corresponding exception for when the employee recovers less than what she claims she is owed. Accordingly, the trial court did not err by awarding mandatory attorney fees and costs under RCW 49.48.030.

*RCW 49.52.070*

The Webbs next take issue with the trial court's application of RCW 49.52.070, specifically its finding that IDA and its officers willfully withheld wages with intent to deprive. RCW 49.52.070 creates civil liability for "[a]ny employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of RCW 49.52.050(1) and (2)." The relevant provision is RCW 49.52.050(2), which makes it illegal to "[w]ilfully and with intent to deprive the employee" fail to pay "any part of his or her wages." In such case, they shall be liable "for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees." RCW 49.52.070.

7

"'The question of whether the employer willfully withheld money owed . . . is a question of fact; our review is limited to whether there was substantial evidence to uphold the court's decision.'" *Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr.*, 175 Wn.2d 822, 833-34, 287 P.3d 516 (2012) (alteration in original) (quoting *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 660, 717 P.2d 1371 (1986)). If the wages are unpaid, "only two instances negate a finding of willfulness: (1) 'the employer was careless or erred in failing to pay' or (2) 'a bona fide dispute existed between the employer and employee regarding the payment of wages.'" *Id.* at 834 (internal quotation marks omitted) (quoting *Morgan v. Kingen*, 166 Wn.2d 526, 534, 210 P.3d 995 (2009)). "A bona fide dispute is a 'fairly debatable' dispute over whether all or a portion of wages must be paid." *Id.* (internal quotation marks omitted) (quoting *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 161, 961 P.2d 371 (1998)). "The burden falls on the employer to show the bona fide dispute exception applies." *Id.*

The Webbs argue three payment issues were "fairly debatable." They contend that bona fide disputes existed over (1) Ms. Wolf's employment status, (2) the form of compensation owed, and (3) the amount owed.

Regarding the first issue, Ms. Wolf must be a current or former employee in order to bring a claim under RCW 49.52.050 and .070. These statutes use the same meaning of

8

"employee" as that found in RCW 49.12.005(4).[2] It states: "'Employee' means an employee who is employed in the business of the employee's employer whether by way of manual labor or otherwise." Thus, RCW 49.52.070's provisions for fees, costs, and doubling of damages do not apply if there is a bona fide dispute "over whether an employment relationship exists." *Schilling*, 136 Wn.2d at 161.

The Webbs contend that IDA's president, Mr. Richey, did not have authority to hire Ms. Wolf because he was himself an independent contractor. However, it has long been held that a person cloaked with apparent authority can hire persons reasonably relying on that authority and bind the company in a wage claim. *Schoonover v. Carpet World, Inc.*, 91 Wn.2d 173, 178-80, 588 P.2d 729 (1978). Furthermore, considering the way in which IDA treated Ms. Wolf as an employee from day one (giving her keys, setting her up with a work station, and accruing leave), we cannot say that the trial court's finding lacked substantial evidence.

Next, Mr. Webb asks us to hold that a bona fide dispute over the form of compensation creates a bona fide dispute over the payment of wages. This is a question of first impression, but we doubt that even a bona fide dispute over the form of compensation is a proper basis for denying fees and exemplary damages under RCW 49.52.070. "A bona fide dispute is a 'fairly debatable' dispute over whether all or a

---

[2] *See* RCW 49.48.082(5) (defining employee).

9

portion of wages must be paid." *Wash. State Nurses Ass'n*, 175 Wn.2d at 834 (internal quotation marks omitted) (quoting *Schilling*, 136 Wn.2d at 161). By these terms, this exception only applies to disputes over the *amount* of compensation owed rather than the *form* of compensation. Regardless of the form of compensation, the fact remains that IDA and its directors willfully refused to compensate Ms. Wolf for six months of work. To allow an employer to so easily defeat RCW 49.52.070's doubling and attorney fee provisions over a matter of form would defeat the legislature's remedial intent. *See Flower v. T.R.A. Indus., Inc.*, 127 Wn. App. 13, 35, 111 P.3d 1192 (2005) ("this provision must be construed liberally in favor of the employee as a remedial statute to protect employee wages and assure payment").

Finally, the Webbs argue that a bona fide dispute existed over the amount owed. Ms. Wolf argued throughout trial that Mr. Webb promised her $60,000 in compensation (a full year's pay) during her exit interview on November 26, 2008. Ultimately, the trial court found against Ms. Wolf's position—finding that the only real agreement was for $30,000 (six months' salary at $5,000 per month). The fact that the Webbs prevailed in part on the amount owed shows that the question of *$60,000* was fairly debatable.

However, the fact still remains that no bona fide dispute existed regarding whether IDA and its officers owed Ms. Wolf the $30,000 ultimately awarded. The Webbs conceded that IDA owed Ms. Wolf $30,000 and gave no justification for withholding that

money. Under these facts, IDA and its officers plainly acted "wilfully and with intent to deprive." Accordingly, the trial court acted properly when it applied the penalty and fee shifting provisions of RCW 49.52.070.

*Admissibility of Deposition Testimony*

The Webbs sought to introduce copies of the depositions of Ms. Wolf and Mr. Richey, but the trial court denied admission because the Webbs did not present sealed copies of the depositions. They had attempted to obtain sealed copies of the depositions, but the reporting company reportedly refused to provide the copies because the Webbs were not attorneys.

Appellants argue that under ER 1003, a "duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Ms. Wolf did not raise a genuine question of authenticity, nor argue that it would be unfair under the circumstances to admit the duplicates. Her lawyer simply said that he did not know how a duplicate could be admitted. CR 30(f)(1). We need not consider the interplay between ER 1003 and CR 30(f)(1), because any error here was harmless.

Evidentiary error "is not reversible error unless the court determines that, 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *State v. Wilson*, 144 Wn. App. 166, 178, 181 P.3d 887 (2008)

11

been materially affected.'" *State v. Wilson*, 144 Wn. App. 166, 178, 181 P.3d 887 (2008) (internal quotation marks omitted) (quoting *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). Admission of Ms. Wolf's deposition would not have changed the outcome of the trial. The Webbs wanted to admit part of the deposition because Ms. Wolf said that she did not remember a meeting where her compensation was discussed. However, further questioning showed that Ms. Wolf just did not remember the meeting the way that Mr. Webb remembered it. There is no argument or indication that Ms. Wolf's trial testimony contradicted her deposition testimony. Thus, admission of the testimony would not have changed the outcome of the trial.

Mr. Richey's deposition was still inadmissible irrespective of whether the copy should have been admitted under ER 1003. Mr. Richey did not testify at trial, and under ER 804 the party seeking to introduce an absent witness's prior testimony bears the burden of explaining why the witness is unavailable to testify. The record contains no evidence indicating an explanation for Mr. Richey's absence. Thus, the deposition was properly excluded.

Accordingly, the trial court's refusal to admit the deposition copies does not require reversal.

*Motion for New Trial*

The Webbs timely moved for a new trial under CR 59, arguing that they were prejudiced by the reporter's undue withholding of Mr. Richey's deposition transcript. We review this ruling for abuse of discretion. *Mega v. Whitworth College*, 138 Wn. App. 661, 671, 158 P.3d 1211 (2007).

Because the deposition was inadmissible per ER 804, as previously noted, the trial court could not have abused its discretion.

*Attorney Fees*

Finally, both sides request attorney fees and costs on appeal. Ms. Wolf requests additional fees under RAP 18.9(a) sanctioning the Webbs for their frivolous appeal. The Webbs did not prevail and are not entitled to their fees. As an employee who has prevailed in her wage claim, Ms. Wolf is entitled to reasonable attorney fees and costs on appeal under RCW 49.48.030 and RCW 49.52.070. *Dice v. City of Montesano*, 131 Wn. App. 675, 693, 128 P.3d 1253 (2006). However, this appeal was not frivolous and we decline to award additional fees as sanctions under RAP 18.9(a).

The judgment of the trial court is affirmed.

No. 30245-8-III
Wolf v. IDA Marketing Servs., Inc.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, C.J.

WE CONCUR:

_____
Kulik, J.

_____
Siddoway, J.