[No. 40077-4-II.   Division Two.   March 15, 2011.]

JAMES B. ZIMMERMAN, *Respondent*, v. W8LESS PRODUCTS, LLC, ET AL., *Appellants*.

*Thomas G. Krilich*, for appellants.

*Jean Barr Jorgensen* (of *Singleton & Jorgensen Inc.*), for respondent.

¶1 Van Deren, J. — John Arbeeny and Charles Rau III, and their marital communities, appeal the trial court's

order granting partial summary judgment to James B. Zimmerman against them in a dispute over liability and damages owed for services Zimmerman allegedly performed for W8Less Products LLC. Arbeeny and Rau were members and managers of W8Less.[1] Arbeeny and Rau argue that material issues of fact precluded summary judgment because (1) Arbeeny and Rau did not act willfully with intent to deprive Zimmerman of wages, as RCW 49.52.050[2] required; (2) Arbeeny and Rau could not have been liable under RCW 49.52.050(2) because there was no obligation to pay a specific amount to Zimmerman; and (3) the trial court erred in striking their CR 11 claim.[3] Because there exist disputed issues of material fact about Arbeeny and Rau's individual and community liability under RCW 49.52.050(2), we reverse the trial court's April 17, 2009, order granting partial summary judgment to Zimmerman and remand to the trial court for further proceedings, including reconsideration of its ruling on Arbeeny and Rau's CR 11 claim.

## FACTS

¶2 W8Less "develop[ed] and manufactur[ed] low cost, low weight ceramic brake rotors for motorcycles, commercial trucks, and automobiles." Clerk's Papers (CP) at 11. Dallas Jolley was the company's original managing member,[4] Arbeeny was a member, and Rau was the company's chief technology officer.

---

[1] W8Less is insolvent and, apparently, is not represented in this appeal as no arguments are presented to us on its behalf.

[2] Former RCW 49.52.050 (1941), former 49.52.070 (1939), and former RCW 49.48.010 (1971) were in effect at the time Zimmerman filed his complaint. In 2010, the legislature amended all three statutes. Laws of 2010, ch. 8, §§ 12055, 12056, 12047. None of the amendments involved substantive changes affecting our analysis. Unless otherwise noted, we cite to the current version of the statutes.

[3] Arbeeny and Rau also raise the issue of whether the corporate veil could be pierced to establish personal liability under chapter 25.15 RCW; but Zimmerman did not plead a violation of chapter 25.15 RCW at trial and the trial court made no ruling on the issue. Thus, we do not discuss it further.

[4] Jolley was also a practicing attorney.

¶3 In November 2007, "the company, under Mr. Jolley's management, was on the verge of bankruptcy, with $2.5 million in debt and no revenues or viable products for sale." CP at 82. In an attempt to save the company, the membership voted to create a board of directors to oversee the company's management.

¶4 Jolley hired Zimmerman to help him market his law practice in December 2007. Arbeeny and the rest of the board learned sometime later that Zimmerman was Jolley's client.[5] Jolley began advocating for W8Less to hire Zimmerman as the vice president of marketing. Because it was attempting to obtain financing from investors, the W8Less board was opposed to acquiring any additional liabilities, which included hiring more employees or consultants.[6] Arbeeny informed Jolley that the board of directors had to approve any hiring decisions and that any new employee would need a written employment contract.

¶5 Also in December 2007, after completing the development of its brakes, W8Less discussed its plans to attend the V-Twin Expo trade show in January 2008. Jolley was insistent that Zimmerman's expertise was necessary to W8Less's success at the trade show.

¶6 W8Less held a board meeting on December 28. Jolley was not at the meeting but he received the meeting minutes by e-mail the following day. Arbeeny stated that the meeting minutes[7] contained the following:

> Personnel matters. The matter of filling key personnel positions was discussed, and specifically the position of CEO [chief executive officer]. The desire is to retain the current CEO in some capacity due to his knowledge and contacts. The concern with individual/unilateral decision-making is a valid one which could be addressed by having an effective board. The possibility

---

[5] In April 2008, Jolley filed a bankruptcy proceeding on Zimmerman's behalf.

[6] W8Less' bank account balance at the end of December 2007 was negative $18.93. At the end of January 2008, the bank account balance was negative $210.88.

[7] The meeting minutes are not contained in the clerk's papers.

of a temporary CEO in transition was also discussed. Candidates for new W8less positions include Chris Harz as CMO [chief marketing officer]; Steve Brett as CEO.

Employment contracts. The current lack of employment contracts is inefficient and opens up a host of accountability issues. All management employees must have employment contracts that clearly explain their duties and responsibilities and were [sic] possible layout milestones for accomplishing goals. Compensation must also be addressed and initially may require differing compensation in the form of stock options or other incentives in order to preserve capitalization with the company. Such contracts may require a specialized attorney since it is not within the realm of Barry Davison's expertise.

CP at 84.

¶7 Between January 15 and February 5, Zimmerman prepared for and attended the V-Twin Expo in Ohio, attended one W8Less board meeting in person and another by telephone, and developed executive strategies and plans to guide the company. Arbeeny asserted that Jolley personally paid for Zimmerman's travel to at least one trade show.

¶8 Before the January 28 board meeting, Jolley proposed a business plan for the W8Less board to show potential investors. The plan suggested that W8Less pay $14,500 per month to Jolley and $12,500 per month to a vice president of marketing. On January 27, Jolley sent Arbeeny an e-mail acknowledging Arbeeny's concern about Jolley's proposed high salary amounts and attempting to justify them.

¶9 When the W8Less board met on January 28, Jolley and Zimmerman attended, along with Arbeeny, Rau, Richard Stephens, and Granvil Hayes. Jolley introduced Zimmerman to the board and presented his qualifications. The board voted to accept Zimmerman for the position of vice president of marketing/business development. Arbeeny contends that "[t]he acceptance was based only upon [Zimmerman']s apparent qualifications as stated by Mr. Jolley and was subject to getting a formal resume, vetting him with previous employers, obtaining additional funding for the company and upon execution of a written employ-

ment agreement specifying duties and compensation." CP at 85. Arbeeny stated further that Zimmerman and Jolley understood that full acceptance of Zimmerman as a vice president of the company was conditioned on completion of the items listed above. The board elected Arbeeny as chairman and gave him authority to approve the hiring and firing of all executives. Following this January 28 board meeting discussion, neither Arbeeny nor W8Less extended Zimmerman an offer of employment with agreed-on terms.

¶10 At the January 28 meeting, the board also accepted the terms of a $40,000 interim bridge loan that limited the use of the loan money to future operations; the money was not to be used for past loans and debts. William Whelan, a W8Less investor, expressed his concern that payment for Zimmerman's past work would "violate the spirit of the [$40,000] bridge loan, which [was] to fund hard core Company operations starting on Feb. 1," not to fund past projects or salaries. CP at 58.

¶11 Zimmerman took the position that Jolley hired him on January 15 and that board approval at the January 28 meeting was to have been a "mere formality." CP at 31. According to Zimmerman, Jolley told him that he would receive his first paycheck on February 1 for work performed in January; and, in reliance on Jolley's representations, he (Zimmerman) had provided his bank account information to Jolley for payment by direct deposit. Zimmerman also stated that on February 1, Jolley presented him with a formal offer letter outlining employment benefits to which he and Jolley had agreed. Zimmerman acknowledged that neither he nor any board member signed the offer letter.

¶12 On February 1, Arbeeny received an e-mail from Zimmerman's e-mail address, purporting to be from Jolley, stating, "As requested, I have attached the documentation for [board of directors] approval." CP at 88. The e-mail contained a proposed employment contract and a nondisclosure agreement for Zimmerman. Arbeeny's response to the e-mail reminded Jolley that the board had to approve

and to execute all contracts and, until it did so, no agreement about employment had been reached.

¶13 On February 4, Arbeeny sent Jolley an e-mail explaining his concerns about the proposed Zimmerman employment contract. Arbeeny's main concerns were that the proposed contract improperly stated that (1) Zimmerman had started working for W8Less on January 8, (2) the board had hired Zimmerman on January 28, and (3) it included unapproved salary and stock options. Stephens also e-mailed Jolley his concerns about W8Less hiring Zimmerman, and he subsequently forwarded his e-mail to Arbeeny. No one ever signed the proposed Zimmerman employment contract that Jolley prepared and presented to the board.

¶14 On February 5, the board met by telephone. Jolley, Zimmerman, Arbeeny, Rau, Stephens, and Whelan participated. Stephens moved to retroactively pay Zimmerman for his January work. The motion was seconded by Jolley but was defeated by Rau and Arbeeny. Arbeeny contends that the actions he and Rau took in voting on this motion were in their "capacity as members of the LLC, for the benefit of the LLC, and not as individuals." CP at 136.

¶15 On February 7, a majority of the company's shareholders terminated Jolley as managing partner and Arbeeny took over as CEO.[8] Arbeeny stated that "Zimmerman w[ould] not be hired in any capacity by W8[L]ess . . . and [they would] consult independent legal coun[se]l about [thei]r obligation to pay him for any work ostensibly done on behalf of W8less." CP at 15. On February 15, Jolley e-mailed Arbeeny Zimmerman's proposed settlement for compensation for the work he had performed on behalf of W8Less.

¶16 On May 16, 2008, Zimmerman filed a complaint against W8Less, Arbeeny, and Rau. Zimmerman alleged (1) failure to pay wages under chapter 49.48 RCW, (2) breach of

---

[8] President Dennis Burrell of BenMaxx LLC, a principal of W8Less, advised Jolley of the termination.

contract and breach of promise of specific treatment, (3) willful withholding of wages under chapter 49.52 RCW, and (4) unjust enrichment. On July 16, W8Less filed its answer, alleging that Zimmerman had failed to state a cause of action and had violated CR 11. Zimmerman filed a motion for partial summary judgment, asking the trial court to find that

> [t]here [wa]s no dispute or genuine issue of material fact that [Zimmerman] was hired by W8Less' CEO and worked for the company; there [wa]s no dispute that [Zimmerman] was not paid for those services; [and] there [wa]s no dispute that [W8Less, Arbeeny, and Rau] acted willfully and with intent to deprive [Zimmerman] of payment of his wages.

CP at 28.

¶17 W8Less, Arbeeny, and Rau's reply to Zimmerman's motion for partial summary judgment stated that (1) Arbeeny and Rau were not liable as members of the LLC for the debts and obligations of the LLC because Zimmerman could not pierce the corporate veil; (2) whether the LLC corporate form should be disregarded was a question of fact; (3) Zimmerman was never an employee and, thus, he could not recover under RCW 49.52.050 and RCW 49.52.070; and (4) Zimmerman violated CR 11 in filing his suit against Arbeeny and Rau personally.

¶18 W8Less, Arbeeny, and Rau filed their own motion for partial summary judgment, reiterating the arguments contained in their reply to Zimmerman's motion. W8Less, Arbeeny, and Rau also wrote to Zimmerman to inform him that W8Less was insolvent, in the process of going out of business, and had no assets "worth fighting over." CP at 132. Zimmerman's response to W8Less, Arbeeny, and Rau's motion for partial summary judgment stated that (1) Zimmerman was an employee of W8Less under RCW 49.48.010 and (2) Rau and Arbeeny were subject to personal liability under RCW 49.52.070 and RCW 49.52.050.

¶19 The trial court granted Zimmerman's partial summary judgment motion and denied W8Less, Arbeeny, and

Rau's motion. The trial court ruled that W8Less, Arbeeny and his marital community, and Rau and his marital community were personally liable to Zimmerman "for wages, in an amount to be determined at trial performed on behalf of W8Less . . . in January and February 2008." CP at 170. Additionally, the trial court concluded that (1) "W8Less[,] Arbeeny[,] and Rau[']s acts in refusing to compensate [Zimmerman] for his wages were willful"; (2) "Arbeeny and Rau [we]re subject to personal liability for refusal to compensate [Zimmerman']s wages"; and (3) Zimmerman was "entitled to exemplary damages against . . . W8Less[,] . . . Arbeeny and his marital community[,] and . . . Rau and his marital community pursuant to RCW 49[.]52[.]070 plus an award of attorney[ ] fees." CP at 170-71. The trial court also struck W8Less, Arbeeny, and Rau's CR 11 claim. W8Less, Arbeeny, and Rau unsuccessfully filed a motion for reconsideration.

¶20 The parties arbitrated the amount of damages due to Zimmerman under the trial court's partial summary judgment order establishing liability. The September 14, 2009, arbitration award stated that "[if] no party has sought a trial *de novo* within twenty (20) days after the filing of the arbitration award, a judgment on the award may be noted by any party for presentation to the judge" assigned the case. CP at 209. On November 13, 2009, the trial court reduced the arbitration award to judgment against W8Less, Arbeeny, and Rau, awarding Zimmerman (1) $6,000.00 in unpaid wages, (2) $23,368.75 in reasonable attorney fees, (3) $722.15 in costs, and (4) $390.95 interest.

¶21 Arbeeny and Rau appeal the November 13 judgment and the trial court's April 17 partial summary judgment order in favor of Zimmerman, as well as its denial of their motion for partial summary judgment. Initially, in response to Arbeeny and Rau's appeal, Zimmerman filed a motion on the merits, arguing that the appeal of the partial summary judgment was improper because a judgment entered following an arbitration award is not subject to appellate review and the parties failed to file for trial de novo within 20 days

of the award being filed. Our commissioner denied the motion on the merits without oral argument. Zimmerman filed a motion to modify the commissioner's March 23, 2010, ruling. We denied the motion to modify.

## ANALYSIS

¶22 Arbeeny and Rau argue on appeal that (1) Rau and Arbeeny, as individual members of an LLC, cannot be held personally liable under RCW 49.52.050(2) because they did not act " 'willfully with intent to deprive the employee' " of his wages, Br. of Appellants at 17 (underline omitted); (2) RCW 49.52.050(2) applies only when the employer has an obligation to pay specific compensation; and (3) no employment relationship existed between W8Less and Zimmerman. Zimmerman responds that (1) the trial court properly held that Arbeeny and Rau were personally liable for Zimmerman's wages under RCW 49.52.070; (2) Arbeeny and Rau willfully deprived Zimmerman of his wages under RCW 49.52.050; (3) the trial court properly permitted a civil suit to be brought for willful withholding of wages under RCW 49.52.070; (4) the trial court properly denied W8Less, Arbeeny, and Rau's CR 11 claim; (5) Arbeeny and Rau's appeal of their motion for reconsideration is waived because they do not submit argument in support of the assignment of error; and (6) Zimmerman is entitled to attorney fees on appeal. Because material issues of fact preclude summary judgment in favor of Zimmerman, we reverse the judgment and remand for further proceedings on the issues raised by Arbeeny and Rau. We further hold that Zimmerman's arguments fail.

I. APPEALABILITY OF PARTIAL SUMMARY JUDGMENT AFTER ARBITRATION

¶23 Zimmerman again argues that "[a]ppellants failed to timely request a trial de novo and are now barred from attacking or setting aside the Judgment on appeal, pursuant to MAR 6.3." Br. of Resp't at 6. Arbeeny and Rau did not

address this issue in their briefing, presumably based on our ruling that they were able to proceed with their appeal on the liability issue. We have already addressed Zimmerman's argument on this issue and do so again only to clarify the appealability of a trial court's ruling following a subsequent arbitration.

¶24 The appealability of the trial court's partial summary judgment order requires us to analyze the interplay of two appealability concerns: first, the appealability of a grant of partial summary judgment and, second, the appealability of a judgment after arbitration. As to the first concern, a grant of partial summary judgment is not a final, appealable order. CR 54(b); *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 300, 840 P.2d 860 (1992). Such orders are subject only to discretionary review. *See Advanced Silicon Materials, LLC v. Grant County*, 156 Wn.2d 84, 89, 124 P.3d 294 (2005). As to the second concern, in *Dill v. Michelson Realty Co.*, 152 Wn. App. 815, 821-22, 219 P.3d 726 (2009), we held that a direct appeal from a judgment following mandatory arbitration was improper and that a request for a trial de novo was the proper way to seek review of the arbitrator's award. "A judgment that is entered on a mandatory arbitration award is generally not subject to direct appellate review." *Dill*, 152 Wn. App. at 820. A direct appeal of a judgment on an arbitration award is allowed if it "relates to a defect inherent in the judgment or the means by which the judgment was obtained." *Cook v. Selland Constr., Inc.*, 81 Wn. App. 98, 102, 912 P.2d 1088 (1996).

¶25 Here, the April 17, 2009, order granting Zimmerman's motion for partial summary judgment was not a final, appealable order. The order did not become appealable as a matter of right until the trial court entered a final judgment on November 13, 2009, when it entered the judgment on the arbitration damages award. *See* RAP 2.2(a).

¶26 Zimmerman previously relied on *Cook* for the proposition that "the trial court order granting [his] Motion for Partial Summary Judgment is not appropriate for appellate

review because this case has been tried on the merits." *Respondent James B. Zimmerman's Motion to Modify*, No. 40077-4-II, at 4 (Wash. Ct. App. Apr. 22, 2010); *Cook*, 81 Wn. App. at 102. In *Cook*, Selland Construction Inc. appealed the trial court's denial of his pretrial motion for summary judgment after the case had gone to mandatory arbitration and an arbitration award had been filed. 81 Wn. App. at 100. Selland, like W8Less, Arbeeny, and Rau, did not request a trial de novo on the arbitrator's award in superior court. *Cook*, 81 Wn. App. at 99. But the denial of Selland's summary judgment motion and the subsequent arbitration of the entire matter gave the arbitrator "authority to resolve both the question of Selland's duty to the Cooks and, of course, whether that duty had been breached." *Cook*, 81 Wn. App. at 101. Division Three of our court held that Selland could not appeal the interlocutory order denying its motion for summary judgment because the arbitrator was not bound by the trial court's order on the summary judgment motion and, thus, the arbitrator in *Cook* had authority to resolve both questions of duty and breach. 81 Wn App. at 100-02.

¶27 Here, Arbeeny and Rau do not appeal denial of summary judgment but, rather, a grant of partial summary judgment to Zimmerman on the liability issue. The trial court determined that W8Less, Arbeeny, and Rau were liable to Zimmerman for past wages but left the amount of damages to be determined later under chapter 49.52 RCW. Thus, the arbitrator was bound by the trial court's liability order, an order that could not have been appealed as of right by W8Less, Arbeeny, and Rau until a final judgment was entered by the trial court.

¶28 Zimmerman also relies on *Nevers v. Fireside, Inc.*, 133 Wn.2d 804, 815, 947 P.2d 721 (1997). *Nevers* dealt with the issue of a timely request for trial de novo after mandatory arbitration, but Nevers, the appealing party, failed to timely file proof that it had served Fireside with a copy of the request. 133 Wn.2d at 806. Thus, *Nevers* is not applicable to the issue of appealability present here.

¶29 Here, the trial court's order of partial summary judgment limited the scope of the arbitrator's determination to the amount of damages and affected the judgment entered following arbitration. For these reasons, and because there was no appeal as of right until a final judgment was entered, we hold that Arbeeny and Rau's appeal is properly before us and reach the merits of their claim.[9]

II. SUMMARY JUDGMENT UNDER CHAPTER 49.52 RCW

¶30 Arbeeny and Rau appeal the trial court's order granting Zimmerman's motion for partial summary judgment under chapter 49.52 RCW.[10] They argue that, as individual members of the LLC, they cannot be held personally liable for wages allegedly due to Zimmerman. We agree that the trial court's summary judgment order finding Arbeeny and Rau personally liable to Zimmerman for wages must be reversed because material issues of fact remain to be resolved.

A. Standard of Review

¶31 We review an order granting summary judgment de novo, performing the same inquiry under CR 56 as the trial court. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45

---

[9] Moreover, if we were to agree with Zimmerman's argument that the present appeal is improper, we would effectively be creating the requirement that a party seek discretionary review of a partial summary judgment order before submitting to arbitration. Thus, although we agree with Zimmerman that Arbeeny and Rau cannot seek direct appellate review of the amount of the judgment entered on the arbitrator's award, we disagree with Zimmerman in determining that they can seek direct appellate review of the trial court's partial summary judgment order establishing liability. Although an application for discretionary review of the partial summary judgment order would have been a better use of judicial resources, there is no rule requiring discretionary review of such an order.

[10] Arbeeny and Rau also appeal the denial of their summary judgment motion but, generally, orders denying summary judgment are not appealable as of right. *Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323, 329, 2 P.3d 1029 (2000); *see also Draszt v. Naccarato*, 146 Wn. App. 536, 540-41, 192 P.3d 921 (2008) ("[W]e will not review the denial of a summary judgment motion where the trial court denies the motion because of material facts and a trial follows on those issues. Instead, the 'losing party must appeal from the sufficiency of the evidence presented at trial.'" (citation omitted) (quoting *Caulfield v. Kitsap County*, 108 Wn. App. 242, 249 n.1, 29 P.3d 738 (2001))).

P.3d 1068 (2002). We consider "the facts and the inferences from the facts in a light most favorable to the nonmoving party." *Jones*, 146 Wn.2d at 300.

¶32  Summary judgment is appropriate where "the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Jones*, 146 Wn.2d at 300-01; CR 56(c). "A material fact is one upon which the outcome of the litigation depends." *Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963). The initial burden is on the moving party to show there is no issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets this initial burden, then "[t]he nonmoving party must set forth specific facts showing a genuine issue and cannot rest on mere allegations." *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989); CR 56(e).

B. Liability for Wages under Chapter 49.52 RCW

¶33 On April 17, 2009, the trial court granted Zimmerman's motion for partial summary judgment based on chapter 49.52 RCW, finding:

> 1) In favor of [Zimmerman] against Defendant[s] W8Less[,] . . . Arbeeny and his marital community[,] and . . . Rau and his marital community for wages in an amount to be determined at trial performed on behalf of W8Less Products LLC in January and February 2008.
>
> . . . . [11]
>
> 3) Defendants W8Less[,] Arbeeny[,] and Rau[']s acts in refusing to compensate [Zimmerman] for his wages were willful.
>
> 4) Defendants Arbeeny and Rau are subject to personal liability for refusal to compensate [Zimmerman']s wages.
>
> 5) [Zimmerman] is entitled to exemplary damages against Defendant[s] W8Less[,] . . . Arbeeny and his marital community[,] and . . . Rau and his marital community pursuant to

---

[11] The trial court crossed out the second item.

RCW 49[.]52[.]070 plus an award of attorneys fees which fee amount is to be reserved for a separate motion upon the conclusion of this matter.

6) In view of the partial summary judgment, Defendants['] affirmative defense of failure to state a claim is stricken.

7) Defendants['] affirmative defense of violation of Civil Rule 11 is also stricken.

CP at 226-27.

¶34 The trial court determined that Arbeeny and Rau were personally liable for Zimmerman's wages under chapter 49.52 RCW. RCW 49.52.050 makes it unlawful for an employer to willfully withhold wages that it is obligated to pay an employee.[12] Under RCW 49.52.070, an employer or officer of the employer, who does so shall be liable to the aggrieved employee "for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages."[13]

¶35 In *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159, 961 P.2d 371 (1998) (alteration in original) (quoting *State v. Carter*, 18 Wn.2d 590, 621, 140 P.2d 298, 142 P.2d 403 (1943)), our Supreme Court addressed the purpose of these two statutes as being to protect employee wages and ensure payment from employers:

---

[12] RCW 49.52.050 states:

Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who

. . . .

(2) Wilfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . .

. . . .

Shall be guilty of a misdemeanor.

[13] RCW 49.52.070 provides:

Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of RCW 49.52.050 (1) and (2) shall be liable in a civil action by the aggrieved employee or his or her assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.

"[T]he fundamental purpose of the legislation, as expressed in both the title and body of the act, is to protect the *wages* of an employee against any diminution or deduction therefrom by rebating, underpayment, or false showing of overpayment of any part of such wages. The act is thus primarily a protective measure, rather than a strictly corrupt practices statute. In other words, the aim or purpose of the act is to see that the employee shall realize the full amount of the wages which by statute, ordinance, or contract he is entitled to receive from his employer, and which the employer is obligated to pay, and, further, to see that the employee is not deprived of such right, nor the employer permitted to evade his obligation, by a withholding of a part of the wages."

¶36 Additionally, our Supreme Court discussed the critical determination under the statute for "whether the employer's failure to pay wages was 'willful.' " *Schilling*, 136 Wn.2d at 159. The court stated "that there are two instances when an employer's failure to pay wages is not willful: the employer was careless or erred in failing to pay, or a 'bona fide' dispute existed between the employer and employee regarding the payment of wages." *Schilling*, 136 Wn.2d at 160. A "bona fide" dispute is a " 'fairly debatable' dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid." *Schilling*, 136 Wn.2d at 161.

¶37 In *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002), the Ninth Circuit applied Washington law and held that RCW 49.52.050 applied only when an employer has "a pre-existing duty imposed by contract or statute to pay specific compensation." Moreover, "[o]rdinarily, the issue of whether an employer acts 'willfully' for purposes of RCW 49.52.070 is a question of fact." *Schilling*, 136 Wn.2d at 160. But in *Schilling*, the court resolved the case on summary judgment because there was no dispute as to the material facts. 136 Wn.2d at 160. Here, reasonable minds could reach different conclusions from the evidence presented, making summary judgment improper. *State v. Clark*, 129 Wn.2d 211, 225, 916 P.2d 384 (1996).

¶38 The parties dispute whether Zimmerman was a W8Less employee. Zimmerman contends that (1) Jolley had implied and apparent authority to hire Zimmerman, (2) Jolley did hire Zimmerman, and (3) the W8Less board approved his hiring at their January 28 board meeting. Zimmerman's declaration stated that "it was [his] understanding that [he] had been hired on or about January 15, 2008 by Mr. Jolley." CP at 31. Conversely, Arbeeny and Rau stated that (1) Zimmerman was never an employee of the LLC and (2) Zimmerman was merely trying to become an employee and Jolley was supporting him in those efforts. Arbeeny's declaration stated that (1) Jolley knew he did not have the authority to hire Zimmerman because all hiring decisions had to be approved by the board of directors; (2) at the board's January 28 meeting, they voted to " 'accept' " Zimmerman for the position of vice president of marketing/ business development but that acceptance was not equivalent to a formal hiring because, before he could be hired, the board had to execute a formal employment contract, obtain funding, receive and review his resume, and contact his previous employers; and (3) the parties never agreed to the terms of Zimmerman's proposed employment contract. CP at 84-85.

¶39 Additionally, the parties disputed the material issue of the amount to be paid to Zimmerman if he had been employed by W8Less. Zimmerman argued that Jolley hired him and agreed to pay him "market-value" compensation. CP at 108. W8Less, Arbeeny, and Rau stated that the parties did not execute a contract for Zimmerman's services and they adamantly disagreed with the amount Zimmerman and Jolley initially proposed to the board. It is undisputed that the parties never signed an agreement setting terms of employment involving Zimmerman.

¶40 The disputed facts clearly demonstrate material issues of fact about whether an employment relationship existed and the amount, if any, owed to Zimmerman under any employment relationship that may have arisen. The fact that W8Less had a negative bank balance near the time

of the alleged hiring creates additional evidence of disputed facts. Thus, there are material issues of fact and a bona fide dispute that precluded the trial court's determination that there was an employment agreement between Zimmerman and W8Less and that Arbeeny and Rau's actions were willful, as the statute required. Thus, the summary judgment ruling finding Arbeeny and Rau personally liable for wages due to Zimmerman under chapter 49.52 RCW was precluded and the matter must be remanded for resolution of the disputed issues of material fact.

## III. CR 11 Claim

¶41 In its order granting partial summary judgment to Zimmerman, the trial court struck what W8Less, Arbeeny, and Rau characterized as their affirmative defense that Zimmerman violated CR 11. On appeal, Arbeeny and Rau argue that the trial court erred in dismissing their CR 11 affirmative defense before hearing all the evidence because "they should be, at first glance, protected from personal liability by the proper creation of the limited liability company." Br. of Appellant at 19. This assertion is based on their proving that they are immune from personal liability as members of the LLC, an issue the trial court did not reach.

¶42 Requests for CR 11 sanctions do not amount to an affirmative defense that prevents the imposition of liability. CR 11 provides that a trial court may impose sanctions against an attorney who signs a complaint, upon finding that the action lacks a basis in fact or is unwarranted by existing law and that the attorney failed to conduct a reasonable inquiry into the factual and legal basis of the claim. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992). The purpose of " 'CR 11 is to deter *baseless* filings and to curb abuses of the judicial system.' " *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994) (quoting *Bryant*, 119 Wn.2d at 219). A pleading violates this rule if it is not warranted by existing law. *See* CR 11(a).

¶43 Because the trial court did not reach the issue of the personal liability of LLC board members as a result of piercing the corporate veil, it was unnecessary for the trial court to reach the assertion that sanctions were appropriate under CR 11. But the trial court may have stricken their CR 11 claim because W8Less, Arbeeny, and Rau improperly characterized it as an affirmative defense. We do not have relevant facts before us to determine the merits of this issue.

¶44 Whether Zimmerman's attorney signed the complaint in violation of CR 11 and other factual determinations regarding this claim can be raised on remand, where the trial court will make its findings and conclusions after all the evidence has been heard and considered.

IV. ATTORNEY FEES

¶45 Zimmerman requests attorney fees on appeal. Arbeeny and Rau do not request attorney fees in their opening brief, but they do so in their reply brief. Because Zimmerman does not prevail on appeal, we decline to award him attorney fees and costs. We also deny Arbeeny and Rau's request for fees for failure to meet the requirements of RAP 18.1(b).

¶46 We reverse the trial court's April 17, 2009, order granting partial summary judgment to Zimmerman and remand for further proceedings.

WORSWICK, A.C.J., and HUNT, J., concur.