**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 21, 2023

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
DECEMBER 21, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CROSSROADS MANAGEMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 101329-9 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| | ) | |
| LACY K. RIDGWAY (formerly Lacy | ) | |
| Caldwell) and MATTHEW RIDGWAY, | ) | Filed: December 21, 2023 |
| husband and wife, | ) | |
| | ) | |
| Respondents, | ) | |
| CARL and SUZAN LEWIS, husband | ) | |
| and wife, | ) | |
| | ) | |
| Petitioners. | ) | |

STEPHENS, J.—This case asks us to address important procedural aspects of the Superior Court Civil Arbitration Rules (SCCARs) and how those rules impact a litigant's ability to appeal a prearbitration order granting partial summary judgment. Carl and Suzan Lewis sued their landlords, Lacy and Matthew Ridgway, for violating the Residential Landlord-Tenant Act of 1973 (RLTA), ch. 59.18 RCW, including by intentionally withholding a portion of their security deposit. If proved, this claim would entitle the Lewises to a return of their full security deposit plus double damages and attorney fees and costs. The Ridgways moved for partial

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

summary judgment on the Lewises' "intentionally withholding" claim, which the trial court granted. This left only the Lewises' claim for a return of the principal sum of their deposit.

After failed settlement negotiations, the parties proceeded to arbitration pursuant to the SCCARs. The arbitrator awarded the Lewises the entirety of their security deposit and awarded attorney fees to the Ridgways under the small claims statute, RCW 4.84.250-.300. Seeking to appeal the order granting partial summary judgment and the fee award, the Lewises sought a trial de novo. They filed their trial de novo request, using an outdated court form that did not provide a line for parties to personally sign the request as required under the court rules and the arbitration statute. The trial court permitted the trial de novo despite the Lewises' lack of compliance, but the Court of Appeals reversed, reasoning that the statute and the SCCARs require strict compliance. The Court of Appeals did not reach the merits of the Lewises' appeal, holding the trial de novo was a nullity and remanding for the trial court to enter judgment on the arbitration award and assess attorney fees and costs. We granted review.

We affirm the Court of Appeals and hold that the Lewises failed to properly request a trial de novo because they did not personally sign the request as required by the court rule and the arbitration statute. Because the sole means to appeal following an adverse arbitration award is through a trial de novo, the Lewises cannot

2

independently appeal the adverse summary judgment order. We reverse the lower courts' attorney fees awards, which failed to consider all of the statutory grounds under which fees may be awarded, and remand to the trial court for further consideration of both parties' fee requests.

FACTS AND PROCEDURAL HISTORY

In May 2015, the Lewises moved into a house owned by the Ridgways and managed by Crossroads Management. As a condition for renting the property, the Lewises paid a $1,695 refundable security deposit. The Lewises and an agent of Crossroads, Calvin Smith, conducted a walk-through of the property and recorded the property's condition on a checklist. When the Lewises vacated the property in May 2018, Smith and the Lewises did a move-out walk-through. The Ridgways did not attend. Smith and the Lewises signed a move-out checklist, indicating that the property was in the same condition as it had been at move-in. Smith informed the Lewises that they would be refunded their full security deposit.

Four days later, the Ridgways visited the property and found substantial damage that Smith had not documented on the move-out checklist. The Ridgways instructed Crossroads to deduct the repair costs from the Lewises' security deposit. Crossroads complied over Smith's objection. After repairing the damage, the Ridgways e-mailed Crossroads invoices and receipts for repairs totaling $1,526.01. Crossroads mailed the statement of damages and a deposit refund check of $158.99

3

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

to the Lewises on June 12, 2018—exactly 21 days after the Lewises left the property. The Lewises immediately returned the check to Crossroads, disputing the charges listed in the damage statement.

Crossroads filed an interpleader action and deposited $1,695 from its trust account into the court's registry. The Lewises answered the interpleader and filed a cross claim against the Ridgways, alleging the Ridgways violated RCW 59.18.280 by intentionally sending "an improper explanation and itemization of charges against the deposit to justify the improper partial refund." Clerk's Papers (CP) at 45. That statute requires a landlord to provide a tenant "a full and specific" damage statement "together with the payment of any refund due the tenant" pursuant to the lease agreement within 21 days[1] after the tenant moves out. RCW 59.18.280. If the landlord fails to do so, the tenant is entitled to their full deposit and, in some circumstances, double damages. *Id.* The Lewises sought to recover their full deposit as well as $3,390 in punitive damages pursuant to RCW 59.18.280, and reasonable attorney fees and costs pursuant to chapter 59.18 RCW and RCW 4.84.250-.300.

Before answering the cross claim, the Ridgways offered the Lewises the full amount of their deposit in exchange for dismissal. The Lewises did not respond to this settlement offer. About a month later, the Ridgways sent another settlement

---

[1] The legislature has now increased this deadline to 30 days. LAWS OF 2023, ch. 331, § 4(1)(a).

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

offer pursuant to RCW 4.84.250-.300 in the principal amount of $1,800. The Lewises rejected this offer, noting it failed to include attorney fees and costs. A day later, the Ridgways offered $2,800 to settle the case, which expressly included $1,000 in attorney fees and costs. The Lewises again rejected the offer.

After negotiations failed, the Ridgways answered the cross claim and moved for partial summary judgment. They argued no issue of material fact existed as to their compliance with RCW 59.18.280 because Crossroads had mailed the damage statement and refund check within the required 21-day period. The Lewises countered that the statute mandates something more than just a timely response and that a question of fact existed as to whether the Ridgways intended to wrongly withhold their deposit for damages.

The court granted the Ridgways' motion, dismissed the statutory claim, and capped the Lewises' damages at the amount of their security deposit. After unsuccessfully moving for interlocutory discretionary review of the summary judgment order, the Lewises submitted the case to arbitration pursuant to the SCCARs and the parties arbitrated the case in July 2020. The arbitrator entered an award in favor of the Lewises in the amount of $1,695—the maximum amount of their damages consistent with the summary judgment order. The Ridgways moved for attorney fees and costs under the small claims statute, which authorizes such an award to a defendant who offers more in settlement than the plaintiff ultimately

5

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

recovers. RCW 4.84.270. Because the Lewises' could not recover more in damages than $1,695 and the Ridgways' settlement offer exceeded that amount, the arbitrator awarded the Ridgways $14,386 in attorney fees and costs.

Unhappy with the fee award and wishing to appeal the partial summary judgment order, the Lewises requested a trial de novo pursuant to SCCAR 7.1. They filed online, as required by local court rule, and used the county's form to request the trial de novo. Unfortunately, the county had not updated its form to comply with a 2019 amendment to SCCAR 7.1 requiring an aggrieved party to personally sign the trial de novo request. The outdated form provided a space only for an attorney's signature, and the Lewises did not personally sign the trial de novo request.

The Ridgways moved to strike the trial de novo request because it lacked the Lewises' signatures. The trial court denied the motion, noting a problem with the county's online filing system as well as the impacts of COVID-19 and finding "that Defendant made timely effort to file in good faith and that inability to load [the] signature was not [Defendant's] fault." CP at 674. The court "found that there was substantial compliance" with the rule. Verbatim Rep. of Zoom Proc. (VRZP) at 4 (Sept. 25, 2020). The Ridgways sought reconsideration, arguing that the Lewises were not required to use the county's form and that the SCCARs require strict compliance. The trial court denied the motion, and the parties proceeded to a trial

6

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

de novo. The Lewises again prevailed on their sole claim for return of their security deposit.

Both parties then moved for attorney fees and costs under various statutes. The Ridgways sought attorney fees and costs under RCW 7.06.060, which authorizes fees "against a party who appeals the [arbitration] award and fails to improve his or her position on the trial de novo." *See also* SCCAR 7.3 ("The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo."). They also requested attorney fees incurred during arbitration under RCW 4.84.250-.300. The Lewises requested attorney fees and costs under RCW 59.18.280(2), which authorizes such an award for the prevailing party "in any action brought by the tenant to recover" a security deposit. They claimed to be the prevailing party because they recovered the full amount of their security deposit.

The trial court affirmed the arbitrator's award of fees and costs to the Ridgways and awarded an additional $12,890.50 in fees to the Ridgways for the trial de novo pursuant to RCW 7.06.060, plus $455.92 in costs. VRZP at 16 (Mar. 26, 2021). In total, the Ridgways received $27,732.42 in attorney fees and costs. The Lewises were awarded $1,695.00, the principal sum of their security deposit in addition to $200.00 in statutory attorney fees and $509.95 in costs.

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

Both parties appealed. The Court of Appeals reversed the trial court's order denying the motion to strike the trial de novo request and affirmed the amended arbitration award. *Crossroads Mgmt., LLC v. Ridgway et al.*, No. 55641-3-II, slip op. at 3 (Wash. Ct. App. Sept. 7, 2022) (unpublished), https://www.courts.wa .gov/opinions/pdf/D2%2055641-3-II%20Unpublished%20Opinion.pdf. The court first determined the trial de novo request was ineffective because it failed to comply with "the plain mandate of the applicable statute and court rule" requiring an aggrieved party to personally sign the request. *Id.* at 12. Because "there is no other path to appellate review of an adverse decision under chapter 7.06 RCW" other than a trial de novo, the court declined to reach the merits of the Lewises' appeal. *Id.* at 13.

The Court of Appeals also affirmed the trial court's decision to award attorney fees to the Ridgways because by failing to comply with the procedural requirements of SCCAR 7.1, the Lewises did not improve their position. *Id.* at 14-15 (citing *Wiley v. Rehak*, 143 Wn.2d 339, 348, 20 P.3d 404 (2001)). The court additionally awarded the Ridgways attorney fees on appeal under RCW 4.84.270 and RCW 7.06.060/SCCAR 7.3. *Id.* at 17. It declined to address whether the Lewises were entitled to attorney fees under RCW 59.18.280(2) because it did not reach the merits of their appeal. *Id.* at 16. The court remanded to the trial court to determine the amount of fees to be awarded to the Ridgways. *Id.* at 17.

8

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

We granted the Lewises' petition for review and accepted amicus curiae briefing from the Washington State Association for Justice Foundation.

ANALYSIS

This case asks us to clarify the requirements for appealing from an adverse arbitration award. Specifically, we must answer whether a party's failure to personally sign a trial de novo request invalidates the request and, if so, whether in the absence of a trial de novo, a party may appeal a prearbitration order granting partial summary judgment.

Answering this question requires us to interpret SCCAR 7.1 and RCW 7.06.050. As with all court rules, we interpret the arbitration rules "as though they were drafted by the Legislature." *Nevers v. Fireside, Inc.*, 133 Wn.2d 804, 809, 947 P.2d 721 (1997) (citing *State v. Wittenbarger*, 124 Wn.2d 467, 484, 880 P.2d 517 (1994)). "Our review of the application of a court rule or law to the facts is de novo." *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 525, 79 P.3d 1154 (2003). Issues of statutory interpretation are also reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The goal of statutory interpretation is to carry out the legislature's intent, and we begin with the plain language of the statute. *Id.* at 9-10.

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

I.    <u>Pursuant to the plain language of RCW 7.06.050 and SCCAR 7.1, a valid trial de novo request requires an aggrieved party's personal signature, and this requirement is strictly construed</u>

Washington law authorizes the arbitration of all civil actions where a money judgment of no more than $100,000 is the sole relief sought. RCW 7.06.020. We have promulgated "procedures to implement mandatory arbitration of civil actions," which are outlined in the SCCARs.[2] RCW 7.06.030. In the case before us, we first address whether the trial court had the authority to waive the signature requirement and accept the Lewises' defective trial de novo request. We hold that it did not and agree with the Court of Appeals that the Lewises' failure to personally sign the request rendered their trial de novo request ineffective.

Any aggrieved party may appeal an arbitration award by filing a trial de novo request with the superior court clerk within 20 days after the arbitrator files the award or a decision on a timely request for attorney fees or costs, whichever is later. RCW 7.06.050(1); SCCAR 7.1(a). Critically, the trial de novo request "must be signed by the [aggrieved] party." RCW 7.06.050(1); SCCAR 7.1(b). The plain language of both the statute and the court rule establish a mandatory requirement by using "must." *Ohio Sec. Ins. Co. v. AXIS Ins. Co.*, 190 Wn.2d 348, 352, 413 P.3d 1028 (2018) (the word "must" "places a mandatory duty on the subject of the

---

[2] The rules were formerly titled "Mandatory Arbitration Rules" (MARs) until the court amended them in 2019. We use the current acronym SCCAR to refer to the rules, unless referring to the former rules.

10

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

clause"). This signature requirement essentially abrogates an attorney's authority as an agent to sign the request on behalf of the aggrieved party. *See Russell v. Maas*, 166 Wn. App. 885, 887-88, 891, 272 P.3d 273 (2012) (signature requirement satisfied when an attorney signs a trial de novo request on behalf of a client); *see also Hanson v. Luna-Ramirez*, 19 Wn. App. 2d 459, 462, 496 P.3d 314 (2021) (noting that cases permitting "only an attorney, rather than the aggrieved party, to sign a request for trial de novo . . . have been superseded by statute").

Courts strictly construe the arbitration rules to best effectuate "the Legislature's intent in enacting the statutes upon which the arbitration rules are based, namely to 'alleviate the court congestion and reduce the delay in hearing civil cases.'" *Wiley*, 143 Wn.2d at 344 (quoting *Christie-Lambert Van & Storage Co. v. McLeod*, 39 Wn. App. 298, 302, 693 P.2d 161 (1984)). "[F]ailure to strictly comply with MAR 7.1(a)'s filing requirement prevents the superior court from conducting a trial de novo." *Nevers*, 133 Wn.2d at 811-12 (emphasis omitted). Substantial compliance is insufficient. *Id.* at 815.

The Lewises do not argue they complied with the statute or court rule. Instead, they urge us to adopt a narrow exception to the mandatory signature requirement and recognize that a trial court has the power to suspend the rules "arising both in equity and in its inherent power to control its own process." Pet. for Discr. Rev. at 8. Specifically, they claim the trial court properly excused their failure to personally

11

sign the trial de novo request because the county required e-filing during the COVID-19 pandemic yet provided a defective form. We reject this argument.

Our case law has long mandated strict compliance. We have repeatedly and unequivocally held that lack of full compliance with the SCCARs will invalidate a trial de novo request. For example, in *Wiley*, two of the three defendants filed a trial de novo request but mistakenly omitted the name of the third defendant. 143 Wn.2d at 342. We rejected the trial de novo request, concluding that the failure to include all the defendants' names "is not an inconsequential error, but rather is a failure to strictly comply with the requirements [of the SCCARs]." *Id.* at 345. In *Pybas v. Paolino*, an attorney entrusted a trial de novo request with a legal messenger. 73 Wn. App. 393, 395, 869 P.2d 427 (1994). The messenger failed to file the notice within the 20-day deadline, and the Court of Appeals concluded the party was not entitled to a trial de novo. *Id.* at 404-05. As a final example, the attorney in *State ex rel. J.M.H. v. Hofer* was unable to timely file the request because he suffered a head injury and his hospital stay overlapped with the 20-day deadline. 86 Wn. App. 497, 498, 942 P.2d 979 (1997). Nonetheless, the Court of Appeals held the trial de novo request was ineffective in the absence of a timely filing. *Id.* The case law underscores the importance of strict compliance with the arbitration statutes and rules as being essential to the goal of providing a swift, efficient, and less expensive path to the resolution of cases. *Alvarez v. Banach*, 153 Wn.2d 834, 838, 109 P.3d

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

402 (2005) ("[I]f we were to require only substantial compliance with the filing requirements, we would be subverting the legislative intent of mandatory arbitration, which is to reduce congestion in the courts and delays in civil cases.").

The Lewises have not persuasively argued why the COVID-19 pandemic is uniquely different from the other sympathetic circumstances in which courts have required strict compliance. Pierce County required electronic filing even prior to the COVID-19 pandemic, and the Lewises do not assert that they had trouble with the e-filing system. PIERCE COUNTY SUPER. CT. LOC. GEN. R. 30 (requiring attorneys to electronically file all documents with the clerk's office). Nor do they claim that COVID-19 restrictions prevented them from signing. Indeed, emergency rules were in place to ensure the judiciary could continue to operate while minimizing the impact of the COVID-19 pandemic. For example, our emergency orders permitted electronic signatures. Am. Third Revised & Extended Ord. Regarding Ct. Operations, *In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency*, No. 25700-B-626, at 12-13 (Wash. May 29, 2020), https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/A MENDED%20Third%20Extended%20and%20Revised%20SCT%20Order%2005 2920.pdf [https://perma.cc/MF47-TY8W]. The Lewises could have provided their signature electronically, avoiding any potential exposure to COVID-19, but they did not. While the Lewises point to the outdated court form as the reason for their

13

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

noncompliance with the applicable rule and statute, it is clear in the record that the Pierce County LINX[3] system permits individuals to upload their own filings. The Lewises could have taken advantage of this option and filed a request that complied with the rules. They did not do so.

We note that every division of the Court of Appeals has addressed whether a trial de novo can proceed despite a party's failure to comply with the signature requirements of the newly amended SCCAR 7.1. Each division has answered no based on our case law demanding strict compliance. And each case occurred during the height of the COVID-19 pandemic. *Shepler v. Terry's Truck Ctr., Inc.*, 25 Wn. App. 2d 67, 522 P.3d 126 (2022) (filed trial de novo request in September 2020, using an outdated, county-provided form that did not include space for the aggrieved party's signature (Division Three)); *Butler v. Finneran*, 22 Wn. App. 2d 763, 516 P.3d 395 (2022) (filed trial de novo request in August 2020, using Pierce County's LINX system and did not include aggrieved party's signature (Division Two)); *Hanson*, 19 Wn. App. 2d at 463 (filed trial de novo request in October 2020 and the aggrieved party failed to sign the trial de novo request (Division One)). These cases are consistent with the principle that reliance on an outdated form, without reviewing the applicable statute and court rule, does not excuse a party's failure to strictly comply with the SCCARs and arbitration statute. *See, e.g.*, RPC 1.1; *see also*

---

[3] LINX stands for "Legal Information Network Exchange."

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

*Hanson*, 19 Wn. App. 2d at 463 (declining to excuse noncompliance with SCCAR 7.1 on the grounds that appellant "relied on an outdated court rule and used an outdated form"). Accepting the Lewises' "narrow exception" would require us to disapprove of this consistent body of precedent.

Moreover, the mandatory signature requirement at issue here is prescribed in statute, and the Lewises provide no authority for courts to waive the statutory requirements for appealing from an arbitration award. Permitting trial courts to make case-by-case exceptions to the statutory arbitration appeal requirements based on practical challenges posed by COVID-19 would risk destabilizing the entire statutory scheme insofar as it would suggest courts have expansive judicial authority to excuse compliance with any statutory requirement.

In sum, the trial court erred in finding the Lewises needed to only substantially comply with SCCAR 7.1(a) because "[n]oncompliance is not substantial compliance." *Mangan v. Lamar*, 18 Wn. App. 2d 93, 97, 496 P.3d 1213 (2021). The trial court had no authority to waive the mandatory signature requirement. We affirm the Court of Appeals' holding that the Lewises' noncompliance with SCCAR 7.1 rendered their filing invalid, thereby nullifying their trial de novo.

We next address whether, in the absence of a valid trial de novo request, the Lewises may appeal the prearbitration order granting the Ridgways' motion for partial summary judgment.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

II.     <u>Absent a trial de novo, a party may not appeal from a prearbitration order, even if that order limited claims at arbitration</u>

In addition to seeking a trial de novo of the arbitration award, the Lewises sought to appeal the trial court's summary judgment order that disallowed statutory double damages and limited their recoverable damages to the principal sum of their deposit. They argue that they are entitled to appeal the summary judgment order independent of their trial de novo request. We disagree.

It is well settled that a trial de novo is "the sole way to appeal" an adverse arbitration award. *Malted Mousse*, 150 Wn.2d at 529; *see also Dill v. Michelson Realty Co.*, 152 Wn. App. 815, 820, 219 P.3d 726 (2009) ("The remedies for an unsatisfactory arbitration award are 'limited to a trial de novo . . . and, in very limited circumstances, a motion to vacate the judgment on the award.'" (alteration in original) (quoting 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE § 79.3 authors' cmt. at 613 (2008-09 ed.)). SCCAR 6.3 embodies the effect of the trial de novo appeal right. It directs the trial court to enter judgment on the arbitration award if a party does not properly request a trial de novo and specifies that the judgment "is not subject to appellate review and it may not be attacked or set aside except by a motion to vacate under CR 60." SCCAR 6.3.

Division Three of the Court of Appeals applied this rule in *Cook v. Selland Construction, Inc.* to dismiss an appeal of a prearbitration order denying a motion

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

for summary judgment where the appellant failed to first request a trial de novo. 81 Wn. App. 98, 912 P.2d 1088 (1996). In that case, Selland moved for summary judgment dismissal of the Cooks' negligence action against it and the trial court denied the motion, leaving all issues to be decided at arbitration. *Id.* at 99-100. The Cooks prevailed at arbitration, and Selland did not seek a trial de novo. Instead, Selland sought appellate review of both the arbitration award and the trial court's order denying its motion for summary judgment. *Id.* The Court of Appeals dismissed the appeal as improper, concluding that "the correct avenue for review of an adverse arbitration award is trial de novo. The superior court sitting in its appellate capacity can then review both the question of Selland's duty and its liability to the Cooks." *Id.* at 102.

Several years after *Cook*, Division Two distinguished this holding and permitted a party to appeal an order granting a motion for partial summary judgment despite the party's failure to request a trial de novo. *Zimmerman v. W8Less Prods., LLC*, 160 Wn. App. 678, 690-93, 248 P.3d 601 (2011). In that case, Zimmerman sued W8Less Products and two members of the company for failure to pay wages and for "willful withholding of wages under chapter 49.52 RCW." *Id.* at 687. Zimmerman moved for partial summary judgment, requesting a ruling that all defendants were liable on both claims. *Id.* The trial court granted the motion and,

17

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

with the liability issue resolved as a matter of law, the parties arbitrated the amount of damages due to Zimmerman. *Id.* at 688.

The defendants in *Zimmerman* did not request a trial de novo after arbitration. Instead, they appealed the judgment entered on the arbitration award and the trial court's order granting partial summary judgment. *Id.* Zimmerman called foul, arguing that under *Cook*, the appeal of the summary judgment order was invalid in the absence of a timely trial de novo request. *Id.* at 690-91. Distinguishing *Cook*, the *Zimmerman* court noted that denial of summary judgment meant the arbitrator in *Cook* could "'resolve both the question of Selland's duty to the Cooks and, of course, whether that duty had been breached.'" *Id.* at 691 (quoting *Cook*, 81 Wn. App. at 101). In contrast, the order granting summary judgment in *Zimmerman* "limited the scope of the arbitrator's determination to the amount of damages and affected the judgment entered following arbitration." *Id.* at 692. The court concluded that "[f]or these reasons, and because there was no appeal as of right until a final judgment [on the arbitration award] was entered, we hold that [the defendants'] appeal is properly before us and reach the merits of their claim." *Id.*

While the distinction between an order denying and an order granting summary judgment may at first glance seem sensible, it fails in this context on closer inspection. The legislature created the arbitration scheme in chapter 7.06 RCW to "'reduce congestion in the courts and delays in hearing civil cases.'" *Nevers*, 133

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Wn.2d at 815 (emphasis omitted) (quoting *Perkins Coie v. Williams*, 84 Wn. App. 733, 737, 929 P.2d 1215 (1997)).  Adopting the *Zimmerman* approach would open the door to piecemeal appeals, lengthen the arbitration process, and undermine the purpose of the arbitration statute.  *Malted Mousse*, 150 Wn.2d at 530 (rejecting piecemeal appeal of an arbitration award is "in harmony with the plain language of RCW 7.06.050 and MAR 7.1-7.2").  Accordingly, we disapprove of the distinction created in *Zimmerman* and reaffirm that the sole means to appeal from an adverse arbitration award is through the trial de novo process.

In reaffirming this rule, it is important to state the limits of our holding.  We do not suggest that a party cannot move to vacate a judgment on an arbitration award if they otherwise meet the CR 60 criteria.  SCCAR 6.3 provides that a final judgment on the arbitration award may be "set aside . . . by a motion to vacate under CR 60."  The Court of Appeals has appropriately recognized the limited circumstances in which parties may bring CR 60 motions, holding they may "'only be brought on the grounds of a defect inherent in the judgment itself or in the means (*i.e.*, the court proceedings) by which it was obtained.'"  *Pybas*, 73 Wn. App. at 398-99 (excusable neglect is not grounds to vacate a judgment on an arbitration award) (internal quotation marks omitted) (quoting *ML Park Place Corp. v. Hedreen*, 71 Wn. App. 727, 743, 862 P.2d 602 (1993)); *Dill*, 152 Wn. App. at 821-22 (trial de novo is sole means to appeal from an adverse arbitration award and a CR 60 motion cannot

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

replace a trial de novo). This limitation ensures that a party does not use CR 60 to "circumvent the time constraints of other rules." *Pybas*, 73 Wn. App. at 398.

Nor do we suggest that a party cannot move for discretionary review of a prearbitration summary judgment order to avoid an unnecessary arbitration of fewer than all claims. *See* RAP 2.3; *Zimmerman*, 160 Wn. App. at 692 n.9 ("discretionary review of the partial summary judgment order would have been a better use of judicial resources"). Indeed, the Lewises moved for discretionary review of the partial summary judgment order, but the Court of Appeals denied the motion. They did not seek further discretionary review of that decision in this court, as was their right.

In sum, we affirm the Court of Appeals and hold that the Lewises failed to properly request a trial de novo and that their appeal from the order granting partial summary judgment was therefore ineffective. Our case law demands strict compliance with the arbitration statutes and rules, which required the Lewises to personally sign their trial de novo request. We take this opportunity to disapprove of *Zimmerman* to the extent that that opinion recognized an exception for certain orders granting summary judgment. Because the sole means to appeal from an adverse arbitration award is a trial de novo, we do not reach the merits of the Lewises' attempted appeal of the adverse summary judgment order.

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

ATTORNEY FEES

Finally, we turn to the question of who is entitled to attorney fees and costs. Under the various fee-shifting statutes at play in this case, the prevailing party is entitled to a fee award. But the question of who has prevailed is not as straightforward as the Court of Appeals and the trial court made it seem.

Absent a statute, contract, or recognized grounds in equity to the contrary, parties in civil actions must bear their own attorney fees. *Williams v. Tilaye*, 174 Wn.2d 57, 61, 272 P.3d 235 (2012); *Cosmo. Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 296-97, 149 P.3d 666 (2006). Three separate fee-shifting statutes potentially apply in this case: the small claims statute, the arbitration statute, and the Residential Landlord-Tenant Act of 1973 (RLTA). The small claims statute entitles the prevailing party to attorney fees and costs. RCW 4.84.250-.300. Its fee-shifting provision recognizes a defendant or party resisting relief as a prevailing party where "either the plaintiff recovers nothing or the defendant makes [a settlement] offer 10 days or more before trial and the plaintiff recovers as much as or less than that offer." *Williams*, 174 Wn.2d at 62 (citing RCW 4.84.270). This fee-shifting scheme is designed to "encourage out-of-court settlements and . . . penalize parties who unjustifiably bring or resist small claims." *Beckmann v. Spokane Transit Auth.*, 107 Wn.2d 785, 788, 733 P.2d 960 (1987).

21

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

The arbitration statute authorizes an award of attorney fees and costs "against a party who appeals the award and fails to improve his or her position on the trial de novo." RCW 7.06.060(1); *see also* SCCAR 7.3 ("The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo."). It also permits a party to recover attorney fees under the small claims statute "even though at the trial de novo the appealing party may have improved his or her position from the arbitration." RCW 7.06.060(3). These rules are designed to discourage meritless actions and appeals. *Wiley*, 143 Wn.2d at 348.

The RLTA's fee award statute for security deposit disputes, RCW 59.18.280, authorizes an award of attorney fees and costs to a tenant who prevails "[i]n *any action* brought by the tenant to recover the deposit." (Emphasis added.) Though the statute does not directly define "prevailing party," its context suggests a tenant prevails by recovering their deposit in whole or in part. *See Campbell & Gwinn, LLC*, 146 Wn.2d at 11-12 (we derive the plain meaning of a statute through its context); *see also Goodeill v. Madison Real Est.*, 191 Wn. App. 88, 102-03, 362 P.3d 302 (2015) (tenant awarded attorney fees and costs after recovering full security deposit on appeal). Interpreting the fee provision in this manner aligns with the purpose of the RLTA, which is to create "remedies for tenants in order 'to protect several tenant interests susceptible to the landlord's upper hand.'" *Silver v. Rudeen*

22

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

*Mgmt. Co., Inc.*, 197 Wn.2d 535, 548, 484 P.3d 1251 (2021) (internal quotation marks omitted) (quoting Thomas Bothwell, Comment, *Washington Tenant Remedies and the Consumer Protection Act*, 10 GONZ. L. REV. 559, 599 (1975)).

Against this backdrop, it appears the lower courts failed to fully address the question of who should be considered the prevailing party for purposes of any attorney fee award. The Ridgways appear to be the prevailing party under the small claims statute because they offered more in settlement than the Lewises recovered at arbitration and at the trial de novo. RCW 4.84.250, .270. Likewise, the Ridgways appear to be the prevailing party under the arbitration statute because the Lewises did not improve their position at the trial de novo in light of their ineffective trial de novo request. RCW 7.06.060(1); SCCAR 7.3; *see also Wiley*, 143 Wn.2d at 348 (a party fails to improve their position at the trial de novo for the purposes of SCCAR 7.3 where they do not comply with the requirements of SCCAR 7.1).

On the other hand, under the RLTA, it appears the Lewises are the prevailing party because they recovered the entirety of their security deposit. RCW 59.18.280. Neither the Court of Appeals nor the trial court disturbed the Lewises' full recovery of their deposit. Yet, without explanation, neither court entertained the Lewises' claim that they were entitled to attorney fees under the RLTA. Instead, the lower courts simply applied the small claims and the arbitration fee statutes, apparently to the exclusion of the RLTA's fee provision.

23

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

Resolving the dispute over attorney fees and costs goes beyond the scope of this court's opinion and will require additional proceedings on remand. The apparent tension among the various statutes was noted by the Court of Appeals in *Housing Authority of City of Everett v. Kirby*, 154 Wn. App. 842, 226 P.3d 222 (2010), *abrogated on other grounds by Hous. Auth. v. Bin*, 163 Wn. App. 367, 260 P.3d 900 (2011). There, the court observed:

> applying [the small claims statute] to residential unlawful detainer actions would, in certain situations, create a conflict between them and the specific statute for fees in residential unlawful detainer actions . . . . For example, consider the case where a landlord brought an unlawful detainer action against a tenant who had paid no rent but, after suit was commenced, made an offer of settlement to pay less rent than the amount claimed due by the landlord. If the landlord rejected the offer and ultimately recovered less than the amount offered, the tenant would be deemed the prevailing party under RCW 4.84.270 since, according to that provision, the defendant prevails if the plaintiff recovers less than the amount offered in settlement or recovers nothing. Thus, the tenant, even though guilty of unlawful detainer for nonpayment of rent, would be entitled to a mandatory fee award under RCW 4.84.250 and .270. This would conflict with the application of RCW 59.18.290, which would authorize a discretionary fee award only to the landlord, who prevailed by recovering possession and unpaid rent as damages. RCW 4.84.250 and .270 would be superseded.

*Id.* at 856.

While the *Kirby* case involved the unlawful detainer provisions of the RLTA, its reasoning recognizes tension in the attorney fee provisions that may apply in various RLTA actions, including a claim to recover a damage deposit as in this case. The Lewises sought attorney fees under the RLTA after receiving the maximum

24

recovery possible in light of the partial summary judgment order: return of their full security deposit. Despite prevailing under the RLTA, they were awarded no attorney fees and were taxed with $27,276.50 for the Ridgways' attorney fees (plus an undetermined amount of fees on appeal). This is because the lower courts recognized the Ridgways as the prevailing party under the small claims statute and the arbitration statute and rules and did not reach the merits of the Lewises' appeal. However, the plain language of RCW 59.18.280 conditions the award of attorney fees and costs to a tenant on *recovery of their security deposit*. This recovery was not in dispute nor did the lower courts consider whether the various fee-shifting statutes conflict. Further proceedings are necessary to resolve the issue of attorney fees and costs.

Accordingly, we vacate the current fee awards to the Ridgways and remand for the trial court to consider both parties' claims for attorney fees and costs requested under the various statutes and rules. Because the briefing in this court is limited and the parties have not had an opportunity to address the *Kirby* decision, the trial court may conduct additional proceedings to determine who is entitled to attorney fees and costs below. Further determination of the parties' requests for attorney fees and costs in this court and the Court of Appeals shall abide that determination.

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

CONCLUSION

We affirm the Court of Appeals' holding that the Lewises' trial de novo request was ineffective because they failed to personally sign the filing. A party must strictly comply with the requirements for requesting a trial de novo and anything short of strict compliance renders a trial de novo request invalid. The Lewises have not established grounds to excuse their noncompliance due to the COVID-19 pandemic or the faulty court form available on the Pierce County Superior Court's website. Because the Lewises did not properly seek a trial de novo, their attempted appeal of the prearbitration summary judgment order was ineffective and we decline to reach the merits of their appeal. We disapprove of the Court of Appeals decision in *Zimmerman* insofar as it suggests a party may appeal a prearbitration order granting partial summary judgment without seeking a trial de novo.

On the issue of attorney fees, we vacate the current fee awards and remand to the trial court for full consideration of both parties' requests for attorney fees and cost under the statutes and rules at issue. Consideration of the requests for attorney fees and costs on appeal in this court and the Court of Appeals will abide the trial court's determination of entitlement to fees under the various statutes.

26

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Crossroads Management, LLC v. Ridgway et al.*, No. 101329-9

Stephens, J.

WE CONCUR:

González, C.J.

Gordon McCloud, J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Coburn, J.P.T.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.